## NORFOLK & W. RY. CO. v. GRAHAM.

·(Circuit Court of Appeals, Fourth Circuit. May 1, 1906.)

No. 640.

**1. BANKRUPTCY—ACTION BY TRUSTEE—RIGHT OF SET-OFF.**

The provision of Bankr. Act July 1, 1898, c. 541, § 57n, 30 Stat. 561 [U. S. Comp. St. 1901, p. 3444], limiting the time for proving claims to one year has reference to the bankruptcy proceedings alone, and, if the claim of a creditor, who is also a debtor, of the estate is one provable in its nature, the fact that he has not proved it within the year does not affect his right to plead it as a set-off or counterclaim in an action by the trustee to recover his indebtedness to the estate as a claim "provable against the estate" within the meaning of section 68b, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3450.]

**2. CONTRACTS—CONSTRUCTION.**

A provision of a contract with a railroad company for construction work giving the company authority to pay the claims of laborers and workmen employed by the contractor and to deduct the amount from that due him under the contract does not create an obligation on its part to pay such claims which can be enforced by the contractor's trustee in bankruptcy.

In Error to the Circuit Court of the United States for the Southern District of West Virginia.

John H. Holt (Holt & Duncan and Jos. I. Doran, on the brief), for plaintiff in error.

Herbert Fitzpatrick (Samuel L. Adams, on the brief), for defendant in error.

Before PRITCHARD, Circuit Judge, and PURNELL and McDOWELL, District Judges.

McDOWELL, District Judge. The following is an excerpt from the opinion of the trial court:

"This was a suit in assumpsit instituted by John T. Graham, trustee of the estate of O. M. Page, a bankrupt, against the Norfolk & Western Railway Company, for the recovery of certain moneys alleged to be due to said estate under a contract entered into between said Page and said railway company for the construction of a certain portion of its roadbed in West Virginia. The defendant pleaded nonassumpsit and also filed a notice of recoupment under the West Virginia statute, under which it sought to prove damages growing out of the contract or transaction upon which the suit was brought, to an amount equal to the demand against it.

"The parties by mutual consent waived a jury and submitted all matters of law and fact to the judgment of the court upon an agreed statement of all facts, from which statement it appears that O. M. Page entered into a written contract on the 11th day of August, 1902, with the defendant, by which he agreed to construct for it, at certain prices therein named, sections 21 to 25 inclusive, of the Naugatuck Branch of the Ohio extension of its railroad. That, by the terms of the said contract, on or about the 15th day of each calendar month estimates of the work done by Page during the preceding month were to be made, and an advance payment of eighty-five per cent. (85%) thereof made to him, the remaining fifteen per cent. (15%) to be retained by the railway company as a compensation for or on account of any damages which might be certified by its engineer to have been sustained from any failure of the said Page to perform said contract. That Page performed work and furnished materials under said contract until the latter part of August, 1903,

during the whole of which time his total work amounted, according to the terms of the contract, to thirty thousand seven hundred and fifty dollars and eleven cents ($30,750.11), all of which was paid him, excepting $4,612.52 of retained percentages, and $3,428.25 worth of work estimated to have been done in the month of August, making a total still in the hands of the railway company, retained percentages and August estimate, amounting to $8,040.77. That the retained percentages for the month of May, 1903, amounted to $1,070.53; for the month of June, $570.66; for the month of July, $651.13, and for the month of August, $604.99; all of which percentages are embraced in the sum total retained percentages of $4,612.52 above named, and are separated into months only for the purpose of showing what these percentages amounted to for the four months next preceding the adjudication of Page as a bankrupt. That Page broke his contract and abandoned his work on or about the 28th or 29th day of August, 1903, and the railway company, through its engineer construction work, branch lines, and in accordance with the terms of said contract, immediately declared in writing the same to be terminated and forfeited, which writing was filed with the railway company, a copy thereof mailed to Page's last known address, and another copy, as provided in the contract, posted at the front door of his office upon his work, on September 1, 1903. That a petition in bankruptcy was filed against Page on the 1st day of September, 1903, and he duly adjudged a bankrupt on the 10th day of said month. John T. Graham was chosen as trustee in bankruptcy by the creditors, and, by an order of the bankrupt court, was authorized and directed to institute this suit.

"It was further agreed that Page was insolvent at the time of his adjudication as a bankrupt, and that he was at that time indebted to laborers who had performed work for him upon the sections agreed to be constructed by him during the three months next preceding such adjudication, in amounts aggregating five thousand dollars ($5,000.00), but exceeding in no individual case the sum of three hundred dollars ($300.00), all of whose claims were proven in the bankrupt court, in accordance with the provisions of the act of Congress. It was further agreed that, after Page had abandoned his work and the railway company had declared his contract forfeited and at an end, it immediately advertised for bids in the customary way for the completion of the work that had been left unfinished by him. Many contractors made bids thereon, but, after the exercise of due care and diligence in the premises upon the part of the railway company, one John T. McKinney was declared to be the lowest and best bidder, and the contract for the completion of the abandoned work of O. M. Page was given to the said McKinney. The new contractor entered upon his work and prosecuted the same with diligence, and under the reasonable supervision of the railway company, to completion; but, in consequence [as it was agreed] of the condition in which Page left the work that had been abandoned by him, the railway company was compelled to pay unto McKinney $11,112.80 more than it would have been required to pay to Page upon the completion of said work had he performed the same at the prices and in accordance with the terms agreed upon by him.

"The defenses of the railway company were two: (1) That, under the plea of non-assumpsit, and by the very terms of the contract itself, it did not owe Page anything; because it had a right to keep not only the retained percentages of $4,612.52, but the August estimate of $3,428.25, as well; the title thereto never having vested in Page, in consequence of his agreement that no money was to become due or payable to him or demandable by him until after the whole work had been completed in a satisfactory manner and certified by the engineer of the railway company, which had not been done. (2) That, even if said retained percentages and August estimate should be held to be a debt due from the railway company to Page, still nothing would be recoverable against the railway company in consequence of its right to recoup, to the extent thereof, or offset against the same, the damages occasioned to it by the very breach by Page of the contract sued upon."

The declaration consisted of the common counts in assumpsit and several special counts founded on the contract. It does not appear whether or not the railway company knew of the bankruptcy proceed-

ings prior to the institution of this action. The trial court ruled in favor of the railway as to the fifteen per cent. retained from the various monthly estimates. But, being of opinion that defense as to the 85 per cent. of the August estimate could only be made by way of counterclaim, and that section 57n, 30 Stat. 561 [U. S. Comp. St. 1901, p. 3,444], barred such counterclaim, the judgment below was as to this item adverse to the railway company. The opinion as to the effect of the bankrupt act reads as follows:

"The only other feature necessary to be considered is as to the applicability of the notice of recoupment filed with the plea of nonassumpsit. As the estate of Page, here represented by the trustee, is that of a bankrupt, the question as to the availability of this notice is solvable only under the provisions of the bankruptcy act, and under those provisions I must hold that it is ineffectual. It is provided by Act July 1, 1898, c. 541, § 68b, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3450], that a set-off or counter claim shall not be allowed in favor of any debtor of the bankrupt which is not made provable against the estate. This account for damages for failure to complete the bankrupt's contract is not so provable, because of lapse of time, and therefore cannot now be set off. It is not the character of the demand which precludes the right to set it off, but the failure to prove it in the proceeding in bankruptcy. Thus unliquidated claims may be set off against liquidated claims, provided they are provable in bankruptcy, and this, as I apprehend, requires that they be presented and proved before the referee. See section 63b, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447] and the discussion thereof in Collier on Bankruptcy (5th Ed.) p. 488; Brandenburg on Bank (3d Ed.) § 1005; Loveland on Bank (2d Ed.) p. 282.

"Had the railway company chosen to liquidate and prove its claim it would seem that it would have been entitled to set it off against the debt due to the estate; but, not having proved its claim within the time limited, or taken steps to have it allowed in the bankruptcy proceedings, it cannot now be pleaded as a virtual set-off in this proceeding.

"Let judgment be entered for $3,428.25, with interest thereon from September 15, 1903."

As the railway company alone has filed assignments and sued out writ of error, we shall deal only with the propositions decided adversely to it. In view of the conclusion we have reached it is unnecessary that we set out the reasons which lead us to think unsound the contention made in behalf of the railway company to the effect that the contract gave the company the right to retain the 85 per cent. of the August, 1903, estimate as liquidated damages. We agree with the trial court that the right of the company to defeat the claim of the trustee could only be asserted by way of counterclaim. We must therefore now consider the question raised under the bankrupt act.

Section 57n, 30 Stat. 561 [U. S. Comp. St. 1901, p. 3,444], is a new provision, appearing for the first time in the act of 1898. The argument relied on by defendant in error may be briefly expressed as follows: The counterclaim of the railway company, while provable in its nature, was not proved in the bankruptcy proceeding within the time allowed by section 57n, and it was therefore when asserted in the court below not a provable counterclaim such as can be set off. So far as we have been able to discover there is no reported case which can be relied upon as a precedent for the view taken by the court below, and none that has more than a tendency to support the opposite view. As the trial court read section 57n, it is a statute of limitations applicable to the counterclaim of a debtor sued in an independent plenary action

brought by the trustee in bankruptcy. We cannot so construe this provision. Section 57 as a whole relates merely to the proof and allowance of claims against the bankrupt in the bankruptcy proceeding. The purpose of 57n is to speed the conclusion of that proceeding. One who is the debtor and the creditor of the bankrupt, whose claim against exceeds his debt to the bankrupt, must prove his claim in the bankruptcy proceeding within the time limit fixed by 57n, in order to share in the distribution of the estate. In re Muskoka Co. (D. C.) 127 Fed. 886. But we find no warrant for holding that his failure to thus prove it is a bar to the use of such claim in diminution of or to defeat the claim of the trustee when asserted in an independent action. If this clause of the act has the effect given it by the trial court, it is as effective when relied on against the counterclaim of one who has never heard of the bankruptcy proceeding, as it is when relied on against the counterclaim of one who has had full knowledge of such proceeding. And it is as effective in case the trustee brings his action after the expiration of the time limit fixed by section 57n, as in case he brings such action while there is yet time for the defendant to prove his counterclaim in the bankruptcy proceeding.

If in the case at bar the railway company had no knowledge of the bankruptcy proceeding until this action was brought, section 57n, as construed by the trial court, has the effect of depriving the company of a valuable right without an opportunity to be heard. The fact that no exception is made in behalf of one who first learns of the institution of the bankruptcy proceeding after the time fixed by this clause seems to us sufficient of itself for denying the clause effect in an independent action. But let it be assumed that in the case at bar the company knew of the bankruptcy proceeding in ample time, and failed to prove its claim for the excess of its damages over the value of the unpaid for work, simply because it regarded the claim as worthless. Under this assumption, the discharge in bankruptcy, when granted, will bar the claim for the excess as a liability against Page (In re Hilton [D. C.] 104 Fed. 981); and the failure of the railway company to prove its claim deprives it of any possible right to share as a creditor in the distribution of the bankrupt estate (In re Shaffer [D. C.] 104 Fed. 982). But we think it cannot be true that such failure to prove the claim to the excess in the bankruptcy proceeding leaves the company in the position of a mere debtor. Statutes of limitation are strictly construed. But even if the rule of construction were otherwise, the language of the clause in question and its context seem to us to plainly limit its effect to proceedings in bankruptcy. In enacting the bankrupt act Congress could have had no reason for requiring a debtor creditor, whose claim against exceeds his debt to the bankrupt, to prove the excess and insist upon his rights as a creditor of the estate. And hence there was no reason for penalizing such failure by imposing a limitation upon the right of a person thus situated who does not wish to prove and claim the excess. The full purpose of section 57n seems to us to be subserved when it is held that the limitation applies merely to claims sought to be asserted in the bankruptcy proceeding.

We think the true solution of the question before us is that the counterclaim which may be set off in an independent action brought by the trustee is (subject to the restrictions of section 68b, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3450]) one that is provable in its nature, and need not necessarily be one that has been, or may yet be, proved in the bankruptcy proceeding. Section 20 of the bankrupt act of 1867 provided:

"That in all cases of mutual debts or mutual credits between the parties the account shall be stated, and one debt set off against the other, and the balance only shall be allowed or paid; but no set-off shall be allowed of a claim in its nature not provable against the estate. * * *"

Section 68 of the present act reads, so far as now material:

"In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid. A set-off or counter-claim shall not be allowed in favor of any debtor of the bankrupt which is not provable against the estate."

In Morgan v. Wordell, 178 Mass. 350, 59 N. E. 1037, 55 L. R. A. 33–41, Mr. Justice Holmes, said:

"The present statute leaves out the words 'in its nature,' but we can have no doubt that it was intended to convey the same idea as the longer phrase in the last preceding act, from which in all probability its words were derived. 'Provable' means provable in its nature at the time when the set-off is claimed, not provable in the pending bankruptcy proceedings."

It may be true that Page's liability to the company was at the time of the filing of the petition and at the date of the adjudication contingent. But before this liability was asserted as a counterclaim it had become fixed and certain in amount. It was certainly provable in nature when it was asserted in the court below. The contention of defendant in error based on the theory that the railway company is securing a preference seems to us without merit. If a counterclaim is provable in its nature, and if it was not acquired as forbidden by section 68b, we find nothing in the bankrupt act to prevent its use under the circumstances existing here.

We have not overlooked the contention of defendant in error to the effect that the contract creates an obligation on the part of the railway company to pay the labor claims. The paragraph relied upon reads as follows:

"In all cases of nonpayment by the said contractor of any sum or sums of money due the laborers or other workmen for work performed under this agreement, the said railway company is hereby authorized to pay such laborers or workmen the amounts due and owing to them by the said contractor; and if any action or proceeding at law or in equity shall be instituted by virtue of any law or statute now in force, or hereafter enacted, for labor and wages on said work, the said railway company may pay all damages, wages, recoveries, costs, expenses, and counsel fees arising therefrom and deduct the same, and also whatever amounts may be paid for wages as beforementioned, from any money due or to grow due to the said contractor; and the said railway company may from time to time retain such reasonable sums as it may deem necessary for its protection in this behalf; and the said contractor shall forthwith pay to the railway company the amount of any deficiency arising from such payment for laborers or other workmen, and from time to time retain

such reasonable sums as it may deem it necessary for its protection in this behalf; and the said contractor shall pay the deficiency arising therefrom upon demand."

We can read this paragraph only as giving to the company a right to pay such claims; not as obliging it to pay them. What rights the labor creditors may have, or may have had, against the railway company under the West Virginia labor lien law we do not know. Nothing in this record touches upon this question, and the existence or nonexistence of any such right can have no bearing upon the solution of the questions here presented for review.

We are of the opinion that the learned trial court erred in rendering judgment against the railway company, and the judgment below must be reversed, and the cause remanded.

Reversed.