## COUTURIE v. ROENSCH.†

(Court of Civil Appeals of Texas. Jan. 18, 1911. Rehearing Denied Feb. 15, 1911.)

1. EVIDENCE (§ 450*) — PAROL EVIDENCE — WRITTEN CONTRACT—EXPLANATION—NOTES —INTEREST· CLAUSE.

Defendant executed a note payable one day after date, containing a clause, "to bear interest at the rate of —— per cent. per annum

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes
† Writ of error granted by Supreme Court.

from ———." Defendant before signing the note caused the blank after the words "rate of" to ·be marked through with a pen. *Held*, that there was a sufficient ambiguity to warrant parol proof of an agreement between the parties that the note was not to bear interest.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2066–2084; Dec. Dig. § 450.*]

2. BILLS AND NOTES (§ 125*)—CONSTRUCTION —PATENT AMBIGUITY.

Where a note containing a clause "to bear interest at the rate of ——— per cent. per annum from ———" was filled by drawing a line through the blank after the words "rate of" with a pen, if the note be regarded by reason thereof as containing a patent ambiguity, it should be construed as indicating an essential erasure of the entire interest clause and to show that no interest was to be paid.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 274–281; Dec. Dig. § 125.*]

3. SET-OFF AND COUNTERCLAIM (§ 58*)—EX-TINGUISHMENT OF PLAINTIFF'S DEMAND—INTEREST AND ATTORNEY'S FEES.

Where, in an action on a note bearing no interest, defendant pleaded a counterclaim greater than the amount of the note, due at the time of suit brought, plaintiff could not recover either interest from the date of suit, or attorney's fees.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Cent. Dig. § 129; Dec. Dig. § 58.*]

4. MASTER AND SERVANT (§ 24*)—CONTRACT OF EMPLOYMENT—TERMINATION.

Defendant having been employed by bankrupts for the season beginning September 1, 1907, and ending August 31, 1908, at a specified salary, bankruptcy proceedings, intervening on April 14, 1908, were a breach of the contract of employment, entitling defendant to recover the full amount of the balance of his salary for the remainder of the year, on his being unable to obtain employment elsewhere during such period.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 25; Dec. Dig. § 24.*]

5. SET-OFF AND COUNTERCLAIM (§ 35*)—NATURE OF CLAIM—BREACH—SET-OFF.

Where defendant's employment contract had been breached by his employers, and the contract term had expired before suit brought to recover on a note executed by defendant to them, the amount due defendant for breach of his employment contract was capable of exact ascertainment and was properly allowed as a counterclaim against the note.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Cent. Dig. §§ 58–64; Dec. Dig. § 35.*]

6. FACTORS (§ 45*)—ADVANCES—INTEREST.

Where a factor, employed at a stated salary, purchased cotton for his principals, and paid for it out of his own funds, receiving reimbursement by draft, attached to bills of lading for cotton shipped out or on cotton held on open account, he was entitled to interest on the amount advanced.

[Ed. Note.—For other cases, see Factors, Cent. Dig. § 60; Dec. Dig. § 45.*]

7. INTEREST (§ 57*)—"OPEN ACCOUNT"—ADVANCES OF MONEY.

Money advanced under a contract or at the instance and request of another is not an open account within Rev. St. 1895, art. 3102, providing that on all open accounts, when no interest is agreed on by the parties, interest shall be al-lowed from the first day of January after the same are made.

[Ed. Note.—For other cases, see Interest, Cent. Dig. § 130; Dec. Dig. § 57.*

For other definitions, see Words and Phrases, vol. 6, pp. 4984, 4985.]

8. BANKRUPTCY (§ 214*)—EFFECT ON RIGHTS OF FACTORS—SALE OF GOODS.

Where defendant was employed to purchase cotton for bankrupts as a factor, and the cotton so purchased was not shipped and sold under the bankrupts' instructions because of their bankruptcy, defendant was entitled to sell the cotton for the best price obtainable and charge the bankrupts with the loss in satisfaction of his lien.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 320; Dec. Dig. § 214.*]

9. FACTORS (§ 47*)—LIENS—POSSESSION.

A factor's possession of goods on which he has made advances as between himself and his principal, is his own and not that of the principal, for the purpose of sustaining a lien.

[Ed. Note.—For other cases, see Factors, Cent. Dig. §§ 65–71; Dec. Dig. § 47.*]

10. FACTORS (§§ 1, 47*)—WHO ARE FACTORS—LIENS—ADVANCES.

Where defendant was employed at a stated salary to purchase cotton with his own funds as the principals' agent, defendant was not a mere salaried employé, but was a factor entitled to a common-law lien on all the principals' goods in his possession, and on the proceeds of such as were lawfully sold by him, not only to secure advances, but also for the general balance of his account. .

[Ed. Note.—For other cases, see Factors, Cent. Dig. §§ 1, 65–71; Dec. Dig. §§ 1, 47.*]

11. DEPOSITIONS (§ 90*)—READING DEPOSITION—DISCRETION.

Where plaintiff read in evidence the greater portion of a deposition, the court in its discretion properly overruled his objection to the answers to certain ex parte interrogatories propounded to defendant, though he was present in court, and plaintiff had a full opportunity to· cross-examine him.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. §§ 248–255, 258–260; Dec. Dig. § 90.*]

12. APPEAL AND ERROR (§ 1054*)—PREJUDICE —RECEPTION OF EVIDENCE.

Where there was sufficient evidence aliunde to sustain the judgment, plaintiff was not prejudiced by the admission of improper evidence,·on a trial before the court without a jury.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4185, 4186; Dec. Dig. § 1054.*]

13. EVIDENCE (§ 139*) — SIMILAR MATTERS — CUSTOM OR COURSE OF BUSINESS.

In a suit on a note given by a factor to his principals, in which the factor pleaded a counterclaim on an account, *held*, that plaintiff, having been permitted to go fully into their dealings with defendant, was properly refused permission to go into said principals' customs in dealing with their agents in other states.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 415; Dec. Dig. § 139.*]

14. APPEAL AND ERROR (§ 1041*) — AMENDMENT OF PLEADING—PREJUDICE.

Plaintiff was not prejudiced by permission, granted to defendant, to amend so as to obviate an objection to testimony offered, where the amendment did not change the general tenor of

defendant's counterclaim or operate as a surprise.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4106–4109; Dec. Dig. § 1041.*]

15. APPEAL AND ERROR (§ 1073*) — ERROR WITHOUT PREJUDICE.

Plaintiff as trustee of bankrupts sued defendant on a note, and defendant filed a counterclaim on which judgment was rendered for defendant for $224.55, the balance found in his favor after deducting the amount of the note. This by reason of an error in one of the items was $36.20 too high. No personal judgment was rendered against plaintiff, however, defendant's sole recourse being the proceeds of certain bagging of the value of $283 on which his lien was foreclosed. *Held*, that it appearing that the interest on the amount due defendant as found would exceed the amount of the error it was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4245; Dec. Dig. § 1073.*]

Appeal from District Court, McLennan County; Marshall Surratt, Judge.

Action by Felix Couturie, as trustee in bankruptcy of Gussoni & Co., against Max Roensch. From a judgment in favor of defendant on a counterclaim, plaintiff appeals. Affirmed.

Saunders, Dufour & Dufour and John W. Davis, for appellant. Prendergast & Williamson, for appellee.

JENKINS, J. The appellant is the assignee in bankruptcy of the firm of Gussoni & Co., cotton buyers, who were doing business in New Orleans. Appellee was their representative in the state of Texas, his office being at Waco. On October 3, 1906, appellee executed his note to Louis Castelli for $2,500, payable one day after date. Castelli was the manager of Gussoni & Co., and the money loaned was in fact the money of said firm, though this was not known to appellee. Appellant instituted this suit to recover the principal of this note, with 6 per cent. interest from the expiration of the three days of grace after the same became due, together with 10 per cent. attorney's fees, it containing the usual attorney's fees clause. Appellant also sued for 1,110 rolls of bagging alleged to be worth $6,600, alleging that appellee had sold a portion of the same for $2,770.90 and deposited the proceeds of said sale in the Provident National Bank at Waco, subject to the decision of the court in this case, and had possession of the remainder of said bagging. Appellant sought to recover said $2,770.90 and the remainder of said bagging. In fact, there were originally two suits, one on the note and one for the bagging, but they were consolidated by agreement of the parties, and we shall treat them as one suit.

Appellee admitted the execution of said note, but alleged that, by oral agreement with Castelli, it was not to bear any interest. He also alleged that at the time said note was transferred to Gussoni & Co., and at the time of their bankruptcy, and at the time of this suit, Gussoni & Co. were indebted to him largely in excess of the amount of said note, and that they were also indebted to him in excess of the value of said bagging, to wit, in the sum of $2,350 for salary which had accrued and was payable prior to bankruptcy, and in the sum of $3,268.13, for moneys advanced by him as the agent and factor of Gussoni & Co. in the conduct of their business at Waco, Tex. He prayed that so much of said amounts as was necessary be allowed as a set-off and counterclaim to said note, and that the same be canceled. He alleged that he had both a common-law lien, as agent and factor, on said bagging, and also a contractual lien thereon and prayed for a foreclosure of his said liens on said bagging, and that, as all of said bagging, except 93 rolls had, by agreement, been sold, and the proceeds, $2,756.10, deposited in the Provident National Bank to await the trial of this suit, the same be applied, as far as it would go, to the extinguishment of the debt due him by Gussoni & Co.

The case was tried before the court without a jury and judgment was rendered that the plaintiff (appellant) take nothing by his suit on said note; that said $2,756.10 in said bank be applied to the extinguishment of appellee's debt, as found by the court, and that his lien on 93 rolls of bagging be foreclosed for the balance due him, which the court found to be $224.55. The respective amounts allowed by the court in favor of each party are as follows, to wit: Plaintiff: Note $2,500; proceeds of bagging in bank $2,756.10—total $5,256.10. Defendant: Exhibit A being various items paid out by appellee for Gussoni & Co. $2,282.69; interest on same from March 1, 1908, $258.52; loss on Ballinger cotton $473.81; loss on Walnut Springs cotton $115.63; balance on salary $2,350—total $5,480.65. Balance in favor of appellee, $224.55.

Appellant's assignments and propositions are numerous; many of them confessedly being to all intents and purposes duplicates of others. Some of them are not in conformity to the rules. We will not attempt to discuss the assignments seriatim, but shall group the legal propositions involved under said assignments.

1. The court, as will be seen from the foregoing statement, did not allow any interest on the note. Appellant objected to the oral evidence of the contract not to pay interest, and asked for a new trial on the ground that there was no legal evidence to sustain the court in this regard. As to interest, the form of said note was as follows: "To bear interest at the rate of ——— per cent. per annum from ———," with the blank after the words "rate of" marked through

---

with a pen. Appellee testified that the agreement to loan him the $2,500 was made with Castelli in Houston, and that it was agreed that no interest would be charged; that the note was afterwards sent to him at Waco with the blank in the same as to interest; and that he marked out the blank with a pen and returned the note to Castelli at New Orleans. It is true that oral evidence is not admissible to vary the terms of an unambiguous written instrument by proving a contemporaneous verbal agreement as a part of said contract, and not omitted therefrom by fraud, accident, or mistake. It is also true that where nothing is said about interest in a note, it will, as a matter of law, be construed as a contract to pay the legal rate of interest from maturity. It is also true, as contended by appellant, that when a blank in the interest clause is left in a note, as it was in this one, before being signed, that it has the same legal effect as if no reference was made to interest. But in this case said blank was not left undisturbed; a pen mark had been drawn through it. What did this mean? The court held that this showed a sufficient ambiguity to admit oral evidence as to interest. We cannot say, under all the facts in this case, that the court erred in so holding. It is equally as well settled that oral testimony is permissible to explain a written instrument when the same is ambiguous, such ambiguity being a latent one, as that such testimony is not admissible where the written instrument is unambiguous. Appellant insists that, if there was any ambiguity in the interest clause of said note, it was a patent ambiguity, and therefore could not be aided by oral testimony. This is also a sound proposition of law (Norris v. Hunt, 51 Tex. 610; Curdy v. Stafford, 27 S. W. 823), but if such was the fact in this case, we do not see how it would help appellant. It occurs to us that if the interest clause in said note is so altered as to make a patent ambiguity, it would not leave the note as if no reference had been made to interest, but would rather show an intentional erasure of the entire interest clause, and thereby indicate affirmatively, that no interest was to be paid. Appellant insists that, even though it should be held that the note bore no interest before payment was demanded, the filing of this suit was a demand for payment, and he should have been allowed interest from that date. The answer to this is that, if the court was correct in his findings of fact, the note had been paid before that date by appellee's counterclaim, and, as he did not owe anything on the principal of said note when the suit was filed, no interest or attorney's fees could thereafter accrue on the same.

2. Appellant insists that the court erred in allowing appellee for the remainder of the year after the bankruptcy of Gussoni & Co., on April 14, 1908. The undisputed evidence shows that appellee was employed by Gus-soni & Co. to conduct their cotton business in Texas for the season beginning September 1, 1907, and ending August 31, 1908, at a salary of $4,400 per annum; that Gussoni & Co. were adjudged bankrupts on April 14th, 1908, and that appellee was unable to get employment for the remainder of the season. There can be no question but that had Gussoni & Co. voluntarily breached their contract by discharging appellee without cause, under the facts above stated, he would have been entitled to recover of them the full amount of his salary for the remainder of the year. Does the fact that appellee lost his position by reason of the bankruptcy of his employers alter the case? We think not. In Re Pettigill (D. C.) 137 Fed. 143, it is said that bankruptcy may be treated as a repudiation, and therefore a breach of the contract. Where a contract for employment is terminated by a bankrupt, the unearned salary of an employé for the balance of the contract year may be liquidated and proven as a claim in bankruptcy against the bankrupt's estate. In re Silverman (D. C.) 101 Fed. 219; In re Grant, 130 Fed. 881, 66 C. C. A. 78; Cobb v. Overmann, 109 Fed. 65, 48 C. C. A. 223, 54 L. R. A. 369, 6 Am. Bankr. Rep. 324. The contract year having expired before this suit was filed, the amount due appellee was capable of exact ascertainment, and it was proper to allow it as an offset and counterclaim. Railway Co. v. Graham, 145 Fed. 809, 76 C. C. A. 385, 16 Am. Bankr. Rep. 610; Stich v. Berman, 49 Misc. Rep. 104, 96 N. Y. Supp. 743, 15 Am. Bankr. Rep. 467; Morgan v. Wordell, 178 Mass. 350, 59 N. E. 1037, 55 L. R. A. 33, 6 Am. Bankr. Rep. 167; In re Semmer Glass Co., 135 Fed. 77, 67 C. C. A. 551.

3. Appellant insists that the court erred in allowing appellee interest for the money advanced by him to Gussoni & Co., for the reason that he was a volunteer. Appellee testified that this money was advanced under a contract with Gussoni & Co. in substance as follows: He was to buy cotton for Gussoni & Co. and pay for the same out of his own funds, and when the same was concentrated at Waco, if ordered shipped out, he was to draw for the purchase price of same with bill of lading attached; if any of it was not shipped out, he drew on open account. The evidence shows that Gussoni & Co. had no funds at Waco during that season with which to buy or margin cotton, and that all cotton bought by them was paid for by the Provident National Bank through an arrangement made by appellee with the bank in his own name, and upon his individual responsibility. This evidence is sufficient to sustain the finding of the court on this issue. Appellant further insists that the money advanced was an open account, and therefore appellee, if entitled to interest at all, was not entitled to interest before the 1st of the following January. Money advanced under a contract, or at the instance and request of

another, does not constitute an open account within the meaning of article 3102, Rev. St. 1895. Where not controlled by statute, as in case of open account, interest may be allowed by way of damages as compensation for the injury inflicted. Heidenheimer & Co. v. Ellis, 67 Tex. 428, 3 S. W. 666; Watkins v. Junker, 90 Tex. 586, 40 S. W. 11.

4. Appellant assigns as error the finding of the court that appellee should be allowed the loss on cotton. The cotton was purchased by appellee for Gussoni & Co., and in their name; but for their bankruptcy it would have been shipped and sold under their instructions. Their bankruptcy having prevented this, appellee had the right to sell the cotton for the best price obtainable and charge them with the loss. The evidence shows that he did this. The judgment of the court was that he had a lien on this cotton, which proposition of law will be discussed in the next paragraph of this opinion in reference to the bagging.

5. The appellant assigns as error the judgment of the court establishing a lien in appellee's favor as to the unsold bagging, basing his proposition upon the alleged fact that appellee was only the salaried employé of Gussoni & Co., and therefore his possession being the possession of his principal, he could have no lien, because he did not have possession. It is true that as to the rest of the world the possession of the agent is the possession of the principal, but as to his lien against his principal the possession of the agent is his own possession and not the possession of the principal. If this was not true, an agent could never have a lien on the property of his principal. The court found that appellee was not the mere salaried servant of Gussoni & Co., but that he was the agent and factor of said firm. The evidence is sufficient to sustain this finding. A factor may receive his compensation by way of a fixed salary. Winne v. Hammond, 37 Ill. 99. A factor has a common-law lien upon the goods of his principal in his possession, and upon the proceeds of such as are lawfully sold by him, to secure the payment of the general balance between himself and his principal, including advances, charges and disbursements made upon or in reference to these particular goods. Mechem on Agency, § 1032. No express contract for such lien is necessary. Haebler v. Luttgen, 61 Minn. 315, 63 N. W. 720. This statement of the law applies to and will sustain the judgment of the court as to the cotton sold at a loss. In so far as the bagging is concerned, the appellee alleged that he had a contract lien thereon, and the evidence on this issue is sufficient to sustain the judgment of the court as to the bagging.

6. Appellant assigns as error the action of the court in overruling his objections to the answers to certain ex parte interrogatories propounded to the appellee. Appellant read in evidence the greater portion of

this deposition, but objected to the remainder being read by appellee on the ground that appellee was present in court and could be interrogated by his attorneys. Appellee was upon the stand as a witness and appellant had full opportunity to cross-examine him. But, aside from this, permitting his answers to be read was a matter in the discretion of the court. Ry. Co. v. Renken, 15 Tex. Civ. App. 229, 38 S. W. 830; Schmick v. Noel, 64 Tex. 408; O'Conner v. Andrews, 81 Tex. 28, 16 S. W. 631; Dillingham v. Hodges, 26 S. W. 87; Ry. Co. v. Burnett, 42 S. W. 314.

7. Appellant objected to certain testimony because the same was not responsive to the questions, and because it appeared to be the conclusion of the witness. In some of these, appellant is not sustained by the record, in some he is, but as to such, an examination of the record shows that there was testimony aliunde sufficient to sustain the judgment, and the trial being before the court, it is not to be presumed that the court was influenced by such illegal testimony. In one instance during the progress of the trial, the court so stated to appellant's counsel. It is not always easy to determine, when evidence is given, whether the answer is the opinion of the witness, or a shorthand statement of the facts. If in such case the trial is before a jury, and the proposed evidence is sufficiently material, it would be a proper practice to retire the jury during the discussion of the admissibility of the evidence, and where the evidence has been erroneously admitted, it should be withdrawn from the jury. But when tried before the court it is but fair to presume, where the contrary does not appear, that the court, in rendering judgment, rejected such evidence from his consideration; and if the legal evidence sustains the judgment, it will not be presumed that the losing party has suffered injury from admission of the same. Saving & Loan Co. v. Peck, 20 Tex. Civ. App. 111, 49 S. W. 160.

8. The court did not err in not allowing appellant to prove the custom of Gussoni & Co. in dealing with their agents in other states. He was allowed to go fully into the dealing of said firm with the Texas office at Waco.

9. Appellant moved to exclude certain testimony, because there was no pleading as a predicate for the admission of such testimony. Thereupon the appellee, over objections of the appellant, was permitted to file a trial amendment which did not change the general tenor of appellee's cross-action, but set out with greater particularity the date and terms of the oral contract of October, 1907, about which appellee had testified, and the motion to exclude said testimony was overruled. Appellant did not and does not contend that he was surprised by said amendment. There was no error in the action of the court in this regard. Canal Co. v. McFarland, 94 S. W. 400.

10. Appellant complains of the judgment

of the court being for a greater amount than the evidence justified. Among other items allowed appellee by the court was loss on Ballinger cotton, $473.81. Appellee admits error in this item to the amount of $36.20, but contends that the judgment should not be reversed on this account, for the reason that no personal judgment was rendered against appellant, and that all he can get out of the judgment is the proceeds of the 93 rolls of bagging, of the value of $283, upon which his lien was foreclosed, and that the interest on the amount due him, as found by the court, would far exceed the said sum of $36.20. We think appellee is correct in this contention.

Finding no reversible error in the record, the judgment is affirmed.

Affirmed.