LINES, Appellant, v. POTTER, Executor, Respondent.

## (176 N. W. 150.)

(File No. 4548.   Opinion filed January 30, 1920.)

1. **Interest—Agreement, No Rate Stated, Implied Legal Rate.**

    Under an agreement to pay interest on an unmatured debt, no rate being stated, the legal rate of interest will be implied.

2. **Same—No Contract, Interest After Maturity, As Damages; Before Maturity, Contract Necessary.**

    While, in absence of contract therefor, interest is allowable after maturity of an obligation to pay money, it is so allowed as damages for breach of obligation; while interest before maturity rests solely upon contract, and is uncollectible unless obligor has contracted to pay same.

3. **Same—Written Contract for Deed, Money Due on "Or Before,"**
  **Rate Of "————" Per Cent Per Annum, Payable "————"**
  **Annually—Whether Drawing Interest, How Construed With-**
  **out Dotted Line—Statute.**

  In a written contract for deed, after the provision for pay-
ment of the deferred payment "on or before" a certain date,
was a provision "with interest at the rate of————per cent
per annum, payable————annually, on the whole sum re-
maining from time to time unpaid," the words "or before"
being underscored by pen, while in the blank space the con-
tinuous line was part of printed form, the dotted line being
made by pen when contract was executed; it containing also
a printed provision, that "in case of * * failure * * * * to
make either of the payments or interest thereon * * * *,
then the whole of said payments and interest shall become im-
mediately due and payable." The contract contemplated that
party of the second part should, and he did, take possession
of the premises, upon execution of the contract. Held, that
the contract did not require payment of interest, that had the
blank before "per cent" been left as in the printed form, the
contract would be construable as intending payment of inter-
est, but that through oversight, parties failed to insert agreed
rate; the statute (Sec. 1039 Rev. Code 1919) would then sup-
ply the omission.

4. **Same—Provision for Payment "Before" Stated Date, Intent Re**
  **Interest.**

  While it might be that the words "or before" in said con-
tract were inserted to enable obligor to pay before due date,
yet he might have contemplated an early resale of the realty,
or for other reason have desired to so contract for such prior
payment, not to stop interest, but that he might acquire legal
title prior to due date.

5. **Contracts—Time Sale of Realty—Possession Stipulated For, Ef-**
  **fect Re Interest, Without Specific Provision.**

  The fact that a time contract of sale of realty contemplated
that vendee should take immediate possession, might lead to
conclusion that he ought to pay interest, provided the court
had any way of knowing the parties did not consider the prin-
cipal sum without interest full consideration for passing of
present possession as well as future title. So held, where the
rate of interest was left blank in printed contract, but whose
provision for the deferred payment made it payable on or
before due date, the words "or before" being underscored with
pen.

6. **Interest—Realty Sale Contract Payable "On Or Before," Blank**
  **Rate "Annually," Previous Due Date, Effect—Provision For**
  **"Payments," Surplusage.**

The provision in a written contract of sale of realty, which provides for but one deferred payment, and that on or before a date less than a year from date of contract, that upon failure "to make either of the payments, or interest thereon," the whole of said payments and interest shall become immediately due and payable," does not evidence that there were "payments" to be made, since the contract did not contemplate any interest that could be due prior to any other default; hence said provision is mere surplusage, and of no legal effect as evidence that parties intended to contract for interest.

7. **Same—Dotted Line in Space Before "Per Cent," Effect Re Interest.**

In determining whether a contract of sale of realty containing a provision for but one deferred payment, and in which a dotted ink line was inserted in the blank space following the words "with interest at the rate of" and preceding the words "per cent per annum, payable————annually," contemplated payment of interest on the deferred payment due "on or before" a specified date, the insertion of the dotted line is thereby construed as though made by vendor, and as though both parties intended to prevent insertion of any interest rate, and as though the word "no" had been inserted in the blank.

8. **Same—Dotted Line Through Interest Rate Blank, Whether Patent Ambiguity or Erasure of Interest Clause.**

If said interest clause was by insertion of such dotted line, so altered as to make apparent ambiguity, it would seem to indicate an intentional erasure of the entire interest clause. Dictum.

Gates, J., and Smith, J., dissenting.

Appeal from Circuit Court, Minnehaha County. Hon Joseph W. Jones, Judge.

Action by Grant Lines against Dan B. Potter, as executor and trustee of the last will and testament of George H. Brace, deceased, to enforce specific performances of a written contract for sale of realty. From a judgment for defendant, and from an order denying a new trial, plaintiff appeals. Reversed.

*Caldwell & Caldwell,* for Appellant.

*Bates & Bates,* and *Bailey & Voorhees,* for Respondent.

(1 To point one of the opinion, Respondent cited: 15 Ruling Case Law, Sec. 18; 22 Cyc., p. 1530; Hornstein v. Cifuno, 86 Neb. 103.

(5) To point five, Respondent cited: Warville on Vendors, Vol. 1, Sec. 180.

30—Vol. 42, S. D.

(8)   To point eight, Appellant cited:   Couturie v. Roensch (Texas), 134 S. W. 413.

WHITING, J.   This action was brought to enforce specific performance of a written contract for deed.   This contract, dated February 19, 1917, was prepared on a printed form, and, so far as the covenants for payment were concerned, it read:

"the said party of the second part hereby covenants and agrees to pay to the said party of the first part the sum of eighteen thousand two hundred ($18,200) dollars in the manner following: The sum of $500.00, at or before the execution of this contract; the sum of $17,700.00 on *or before* the 19th day of August, 1917, with interest at the rate of ------------------- per cent. per annum, payable---------------------annually, on the whole sum remaining from time to time unpaid. * * *"

The italicized words were written by pen.   In the blank places after "of" and "payable," the continuous line was a part of the printed form, while the dotted lines had been made by pen at time of execution of contract.   The contract also contained a printed provision that:

"In case of * * * failure * * * to make either of the payments, or interest thereon, * * * then the whole of said payments and interest shall become immediately due and payable. * * *"

The contract contemplated that the party of the second part should, and the evidence introduced showed that he did, enter upon and take possession of the premises immediately after the execution of the contract.

[1]   Respondents have cited many authorities, all of which support the well-established rule of law announced in 15 R. C. L. 21, that:

"Where there is an agreement to pay interest on an unmatured debt, and no rate is stated, the legal rate of interest will be implied."

[2]   The above rule is conclusive in favor of respondent, if the contract before us contains "an agreement to pay interest." The question before us is, therefore, not what rate of interest should be allowed, but whether there was an agreement to pay interest.   We must not lose sight of the fact that, while in-

terest will, in absense of contract therefor, be allowed after maturity of an obligation to pay money, it is so allowed as damages for the breach of the obligation, while interest before maturity rests solely upon the contract and can never be collected unless the obligor has contracted to pay same. O'Brien v. Young, 95 N. Y. 428, 47 Am. Rep. 64.

[3] The sole question before us is the intent of the parties, which, owing to the death of one of the parties and the incompetency of the other to testify, must be gathered from the writing itself. Did the parties intend to contract for interest? The trial court held, as we think erroneously, that they did. From a judgment and order denying a new trial this appeal was taken.

[4] If the blank before "per cent." had been left as in the printed form, we would have no hesitancy in holding that the parties did intend to contract for interest, but that, through oversight, they failed to insert the rate agreed upon. The statute would then supply the omission. Respondent urges that the provision, that appellant might pay the $17,700 "before" August 19th indicates an intent that the $17,700 should bear interest pror to August 19th. It might be that the words "or before" were inserted in order that appellant might make a payment earlier than August 19th and stop interest; on the other hand, appellant might have contemplated an early resale or for some other reason have desired the contract worded so that he could make an early payment, not in order to stop interest, but that he might acquire the legal title prior to August 19th, if it should happen to be to his interest so to do.

[5] Respondent urges that because the contract contemplated that appellant should take possession of the land he should pay interest from its date. It is a fact from which we might conclude that appellant ought to pay interest, provided we had any way of knowing that the parties did not consider the principal sum, without interest, full consideration for the passing of present possession as well as future title; but this we do not know. Moreover, we are not empowered to make a contract for these parties, howsoever just our contract might be.

[6]  Respondent urges that the printed provision:

"In case of * * * failure * * * to make either of the payments, or interest thereon, * * * then the whole of said payments and interest shall become immediately due and payable"

—is evidence that the contract itself contemplated interest. No one would claim that it was evidence that there were "payments" to be made after the execution of the contract; the contract specifically providing for but one payment after such execution. The most·that can be said is that, if there were payments or interest contracted for and default should be made therein, then, under such printed provision, all payments and interest should· become immediately due and payable; but it is clear that this contract did not contemplate any interest that could possibly be due prior to any other default, as the first "annual" period from date of contract would not expire until six months after August 19, 1917. It is therefore apparent that this provision was mere surplusage, of no possible legal effect, and no evidence that the parties intended· to contract for interest.

[7]  Let us then try to determine what was in the minds of the parties when one of them, we know not which one, with the presumed consent of the other, drew the dotted· line across the blank place before the ·words "per cent." This act is to be construed exactly as though we knew that it was the known act of the party of the first part. We are bound· to conclude that it was done with the intent on the part of both parties to prevent the writing in of any rate of interest. Why should the parties intentionally prevent the writing in of a rate of interest, if they were intending to contract for interest? Presuming that these parties were reasonable beings, possessed of ordinary ntelligence, we must conclude that they never would have so filled this blank if they were contracting for interest—it is not in accordance with usual practice, nor with the dictates of common sense so to do. These parties indicated an intent not to contract for interest just as plainly as though they had inserted the word "no" in the blank; otherwise their deliberate act was absolutely without purpose or effect.

[8]·  In Couturie v. Roensch (Tex. Civ. App.), 134 S. W. 413, the court held that where, as in the case before us, a blank

after the words "rate of" and before the words "per cent." had, before the note was signed, been drawn across by a pen, the trial court did not err in holding that there was such a latent ambiguity as justified admitting parol proof as to intent. It was, however, contended that the ambiguity was patent, and could not, therefore, be aided by oral evidence. The court said:

"It occurs to us that, if the interest clause in said note is so altered as to make a patent ambiguity, it would not leave the note as if no reference had been made to interest, but would rather show an intentional erasure of the entire interest clause, and thereby indicate affirmatively that no interest was to be paid."

The judgment and order appealed from are reversed.

GATES, J. (dissenting). My colleagues consider that we must presume that the drawing of the dotted line through the blank between the words "rate of" and the words "per cent." was the known act of the party of the first part and that the parties thereby demonstrated an intent that the agreement should not bear interest before maturity. If we are bound to make presumptions, why not presume that, if the act was done by the party of the first part, it was done so that a rate of interest less than the legal rate could not have been inserted if the blank had not been filled, or if the act was done by the party of the second part, why not presume that it was done so that a rate of interest greater than the legal rate could not have been inserted if the blank had not been filled?

But where is there room for a presumption that interest was not intended when the agreement expressly says "with interest"? If there is any presuming to be done, I say we should conclusively presume that interest was intended, but that, the rate not being given, the legal rate was intended. Section 1416, C. C. (section 1039, Rev. Code 1919). I have always supposed that the drawing of a line through a blank between words in a printed form was done for the purpose of filling the gap. The filling of the blank in the same manner in this instrument between the words "payable" and "annually" indicated that interest was to be paid annually. It was so filled to prevent the insertion of words which otherwise might have

been inserted so as to make interest payable, monthly, quarterly, or semi-annually. The filling of this blank did not eliminate from the agreement all reference to the time of payment of interest. No more, in my opinion, did the filling of the blank between the words "rate of" and "per cent." eliminate from the agreement the understanding that interest should be paid. If there had been no blank between those words, and therefore if the agreement had read, "with interest at the rate of per cent. per annum payable annually on the whole sum," etc., would we not be compelled to say that the agreement called for interest at the legal rate? I think this instrument should be so construed.

It seems evident to me that, if the parties had not intended to contract for interest, they would have obliterated the words "with interest." By their "deliberate act" they allowed those words to remain. Instead of imputing to the parties the intention not to contract for interest, the drawing of the dotted line, in my opinion, imputed an intention not to declare the rate of interest that the deferred payment should bear. The decision of the intermediate Texas court relied upon in the majority opinion affirmed the decision of the trial court in its holding that a state of facts similar to those at bar showed a latent ambiguity and therefore allowed explanatory evidence. If the ambiguity was latent, it could not be patent. Therefore the quoted portion of that opinion was inconsistent with the decision, and besides was entirely obiter.

There is, however, another ground upon which, I think, the decision of the trial court should be sustained. While the contract between the parties did not in so many words provide that the vendee should take immediate possession of the property, it plainly so contemplated because it did contain a provision that upon default of the vendee in performing the terms of the agreement the vendee should have the right to re-enter and take possession of the premises. The trial court found:

"That immediately upon the execution of said contract, the plaintiff entered into possession of the said premises hereinbefore described, and ever since that time has been and now is in possession of the same, and has received and retained for his own use all of the rents, income, profits, and benefits arising therefrom, which are of the value of $1,120."

It seems to be a general rule that, where no specific agreement is made as to interest on deferred payments the law will imply an agreement to pay interest, if the agreement contemplates that the vendee is to take immediate possession. In Warvelle, Vendors, § 180, the author says:

"And it must be a strong case, clearly made out, in which the purchaser will not be obliged to pay interest where he has received the rents and profits."

In King v. Ruckman, 24 N. J. Eq. 298, the court laid down the general rule as follows:

"In equity, the result of a contract sale is that the thing sold thereupon becomes the property of the purchaser, and the purchase money the property of the vendor; that, as a corollary, the purchaser is entitled to the rents of the estate from the time fixed for completion, and the vendor is entitled to interest on the purchase money from the same time; that the estate and the purchase money are things mutually exclusive, and neither party can at the same time be entitled to both."

That case, like this, was one for specific performance. The same rule should apply where the contract contemplates possession by the vendee prior to the date fixed for completion of the contract, unless a contrary intention clearly appears.

Now, unless my colleagues intend to go so far as to hold that the contract before us affirmatively provides that no interest shall be charged on the deferred payment, then they should affirm the judgment. If they hold as they apparently intend, they thereby declare that evidence would not have been admissible to explain the intent of the parties, if the living party had not been precluded from testifying by the death of the other, It seems to me that in any event this court should go no farther than to hold that the ambiguity was such that evidence was admissible to explain it (following the real decision of the Texas court). Thereupon, no evidence being offered other than the matter of the taking of immediate possession by the vendee and the receipt of the rents and profits by him, the court should in any event affirm the judgment.

· Upon both grounds herein discussed, I think the judgment should be affirmed.

SMITH, J., concurs in the dissent.