Donald O. FERGUSON, Appellant,

v.

Joseph R. YORFINO, Sr., Appellee.

No. 15950.

Court of Civil Appeals of Texas, San Antonio.

July 12, 1978.

Rehearing Denied Sept. 13, 1978.

W. Michael Murray, San Antonio, for appellant.

Jack M. McGinnis, San Antonio, for appellee.

KLINGEMAN, Justice.

This appeal involves a suit on a written contract to construct a residence. Under date of June 29, 1973, Appellant, Donald O. Ferguson, and Appellee, Joseph R. Yorfino, Sr., signed an AIA "Standard Form of Agreement Between Owner and Contractor" providing that Yorfino was to construct a house for Ferguson on a costs-plus basis, under which Yorfino was to receive the costs of all labor and material, plus a fee of 15 per cent of the costs of such labor and material. [PX–1]. This instrument will sometimes be hereinafter referred to as the "AIA Contract." Such agreement contains a provision that the maximum cost was not to exceed $65,000. Thereafter, a second writing dated September 11, 1973, was entered into between Ferguson and Yorfino [PX–3], which provided that such agreement supersedes, negates and in all things voids any prior written or oral agreement or contract which may have existed between the parties, and further provides

that Ferguson will pay Yorfino his costs plus 15 per cent for all work, material, or other costs; and that there is no agreement between the parties as to maximum cost for construction of the residence.

Disagreements arose between the parties and ultimately, Ferguson filed suit against Yorfino asserting that he had overpaid Yorfino. Yorfino filed a general denial and a counterclaim in which he contended that Ferguson had failed to pay him certain amounts owing him, consisting of some supervisory costs and underpayment of the 15 per cent fee. Ferguson filed a supplemental pleading alleging that the second contract was signed under duress.

Trial was to a jury which found: (1) Plaintiff's Exhibit No. 3 was not signed by Ferguson under duress; (2) Plaintiff's Exhibit No. 1 was a sham; (3) Supervision was a cost agreed to between Ferguson and Yorfino to be paid by Ferguson; (4) The reasonable value of the supervision performed by Yorfino on the house in question was $12,400. The trial court entered judgment that Ferguson take nothing from Yorfino and that Yorfino should take $9,910 from Ferguson, which amount is the difference between the costs of work, material, and other costs, including supervision costs, plus 15 per cent of such costs, and the amount paid by Ferguson; and that Yorfino is entitled to a lien to this extent.

Appellant by six points of error asserts: (1) the court erred in granting judgment for appellee on the basis of the writing of September 11, 1973, since appellee was under a pre-existing obligation under Plaintiff's Exhibit No. 1 to render the same services and there was no consideration for the second contract; (2) the jury's finding that Plaintiff's Exhibit No. 3 was not signed by Ferguson under duress is against the great weight and preponderance of the evidence; (3) the court erred in granting judgment for appellee based on the jury's finding that Plaintiff's Exhibit No. 1 was a sham, in that the defense of sham is an affirmative defense which was not pleaded by appellee; (4) there is no evidence that Plaintiff's Exhibit No. 1 was intended to be a sham in its entirety; (5) the court erred in granting judgment for Yorfino since there was no pleading or evidence that the AIA contract was entered into as a result of fraud, accident, or mistake, and therefore any evidence admitted to vary the terms of the AIA contract was in violation of the parol evidence rule and is of no legal effect; and (6) the court erred in overruling appellant's motion for summary judgment since appellant's original petition was filed pursuant to Rule 185 as a suit on a sworn account and Yorfino's answer and counterclaim failed to comply with the requirements of such rule as to denial of the claim.

Appellant is an attorney who desired to construct a residence and appellee is a general contractor. Appellee testified that he signed the AIA contract after appellant told him that he needed it in connection with a loan he was making on the residence; that the AIA contract was just for the purpose of getting a loan; that he told appellant that the residence could not be constructed for $65,000; that he told appellant that he wanted an open-end contract to which appellant agreed and thereafter appellant prepared the second agreement [PX–3]; that appellee did not in any way dictate the terms; that after appellant typed the agreement he asked appellee if it was all right and appellant then signed it. He further testified that the second agreement voided the AIA contract, which contract was just for the purpose of getting a loan.

Appellant testified that he needed a contract to obtain a loan and that the bank required a signed contract in its file; that appellee desired a second agreement and told him that if he did not get it he would walk off the job; that although appellant prepared the second agreement, he was prepared to sign anything to get the job done; that a loan commitment letter was about to expire; that he owed several subcontractors; that he was over a barrel; that he signed the instrument under duress.

Appellee testified that he did not threaten to leave the job, but that he did tell appellant that the job could not be done for $65,000.

A number of appellant's points of error stand or fall on whether the AIA contract was a sham, and we will first discuss appellant's points of error in regard thereto. Point of Error No. 3 asserts that the defense of sham is an affirmative defense which was not pleaded by appellee and therefore was waived. Point of Error No. 4 asserts that there is no evidence to support the jury's finding that such contract was a sham. Point of Error No. 5 asserts that there is no pleading or evidence that the AIA contract was entered into as a result of fraud, accident, or mistake, and therefore any evidence varying the terms thereof was in violation of the parol evidence rule and of no probative force.

■ Appellant's point of error that the defense of sham was not properly pleaded and therefore was waived, is without merit. While the word "sham" is not specifically used in appellee's pleadings, it is clear from an examination of the entire pleadings that appellee asserted that the AIA contract was never intended to be the agreement between the parties. Said pleadings are sufficient to support the finding of sham. Moreover, there was no element of surprise to appellant as is evidenced by a motion in limine filed by appellant in which he in effect recognizes a plea of sham by appellee.

■ We have heretofore set forth in some detail the material testimony. In summary, the following evidence supports the jury's finding as to sham:

(a) Yorfino's testimony that the reason he signed the AIA contract was because Ferguson told him he needed it for a loan;

(b) Yorfino's testimony that the contract was only for the purpose of getting a loan;

(c) Testimony by Yorfino that he told Ferguson that the house could not be built for $65,000;

(d) Testimony by Yorfino that after Ferguson got the commitment from the bank he told Yorfino not to worry about the costs limitation provision;

(e) Testimony by Yorfino that he signed the AIA contract as a favor to Ferguson to help him get the interim financing;

(f) Plaintiff's Exhibit No. 3 prepared and signed by Ferguson dated September 11, 1973, which states that such agreement between Yorfino and Ferguson supersedes, negates, and in all things voids any prior writing or oral agreement or contract which may have existed between the parties; that Ferguson will pay Yorfino his costs plus 15 per cent for all work, material, and other costs; and that there is no agreement between the parties as to maximum cost for the construction of the residence.

There is sufficient evidence to support the jury's answer to Special Issue No. 2 [sham].

Appellant's Point of Error No. 5 asserts that since there was no pleading or evidence that the AIA contract was induced by fraud, accident, or mistake, any evidence admitted to vary the terms thereof was admitted in violation of the parol evidence rule and is without probative force. We disagree.

■ The extrinsic evidence rule presupposes both the existence and the validity of written instruments. In other words, before the rule can be applied, a valid written instrument must have been made by the parties. Parol evidence is admissible to show that a written contract, by virtue of its invalidity, actually does not evidence any agreement at all between the parties. For example, it may be shown by parol that the minds of the parties had never met, or that an instrument, which purports on its face to be a contract, actually was not intended as such by the parties. 23 Tex.Jur.2d, *Evidence* § 353 (1961).

The correct rule is set forth in *Baker v. Baker*, 143 Tex. 191, 183 S.W.2d 724 (1944), as follows:

The rule excluding extrinsic evidence as to a written instrument has no place in any inquiry where the court has before it an instrument not then effective [citations omitted]. The rule that parol evidence is inadmissible to contradict or vary the terms of a written contract applies only to a written contract in force as

a binding obligation. Parol evidence is always competent to show the nonexistence of a contract or the conditions upon which it may become effective. [citations omitted].

The parol evidence under objection attacked the validity of the AIA contract, and was intended to show that it was nonexistent. Under such circumstances, there was no necessity to plead or prove fraud, accident, or mistake.[1]

Appellant's Points of Error Nos. 3, 4, and 5 are overruled.

■ Appellant's first point of error asserts that the trial court erred in rendering judgment for Yorfino on the basis of the writing of September 11, 1973 [PX–3] since Yorfino was under a pre-existing obligation to render the same services by virtue of the AIA contract and there was no consideration to support the September 11, 1973, agreement. This point of error presupposes the validity of the AIA contract. The jury found that the AIA contract was a sham and there is sufficient evidence to support this finding as hereinbefore discussed. Since there was no pre-existing obligation, this point of error necessarily fails, and is overruled.

■ Appellant's Point of Error No. 2 asserts that the jury's finding that appellant's signing of the September 11 agreement [PX–3] was not made under duress, is against the great weight and preponderance of the evidence [Special Issue No. 1]. The duress alleged and relied on by appellant was that Yorfino threatened to walk off the job if he did not get an open-end agreement. Yorfino testified that he did not threaten to walk off the job.

Our courts have consistently followed the rule that (1) there is no duress unless there is a threat to do some act which the party

threatening has no legal right to do; (2) there must be some illegal exaction or some fraud or deception; (3) the restraint must be imminent and such as to destroy free agency without present means of protection. *Ward v. Scarborough,* 236 S.W. 434 (Tex.Com.App.1922, jdgmt adopted); *Tower Contracting Co., Inc., of Tex. v. Burden Bros., Inc.,* 482 S.W.2d 330 (Tex.Civ.App. Dallas 1972, writ ref'd n.r.e.); *Daugherty v. Gower,* 403 S.W.2d 535 (Tex.Civ.App.— Amarillo 1966, no writ); *Sanders v. Republic National Bank of Dallas,* 389 S.W.2d 551 (Tex.Civ.App.—Tyler 1965, no writ).

It is to be remembered that appellant is a lawyer and that he himself prepared and signed the instrument which he now asserts was made under duress. The testimony pertaining to the alleged duress involved is rather skimpy. It consists basically of appellant's testimony that the reason he prepared the instrument of September 11, 1973, was because Yorfino was threatening to walk off the job, and that he was prepared to sign anything to get the job done. On the other hand, Yorfino testified positively that he did not threaten to walk off the job. The testimony was conflicting and the jury was the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. Here, the jury apparently chose to believe Yorfino. Its holding is not against the great weight and preponderance of the evidence. Appellant's Point of Error No. 2 is overruled.

■ Appellant's sixth point of error asserts that his suit is a suit on a sworn account and that since Yorfino did not answer in accordance with the provisions of Rule 185, Tex.R.Civ.P., no evidence could be admitted and therefore the court erred in overruling appellant's motion for summary judgment.

---

1. In any event, if there was any error, it was a harmless error. It appears from the record that under date of September 11, 1973, Ferguson and Yorfino entered into an agreement in writing for the construction of the residence involved which provided: (a) Ferguson will pay Yorfino his costs plus 15% for all work, material or other costs; (b) there is no agreement between the parties as to maximum costs for the construction of the residence; (c) this agreement supersedes, negates and in all ways voids any prior written or oral agreement or contract which may have existed between the parties. This instrument in writing is a sufficient basis to support the relief sought by Yorfino, without resort to parol evidence.

Ferguson's suit was a suit to recover excess money allegedly paid to Yorfino for the construction of a house under a written contract. It is not a suit on a sworn account.

Our Supreme Court in *Meaders v. Biskamp,* 159 Tex. 79, 316 S.W.2d 75 (1958), said:

It has been held that a sworn account is defined according to its popular sense and applies only to transactions between persons, in which there is a sale upon one side and a purchase upon the other, whereby title to *personal* property passes from one to the other, and the relation of debtor and creditor is thereby created by general course of dealing (which may include only one transaction between the parties). It does not mean transactions between the parties resting upon special contract [citations omitted].

See also *McDaniel v. National Steam Laundry Company,* 112 Tex. 54, 244 S.W. 135 (1922, opinion adopted); *Couturie v. Roensch,* 134 S.W. 413 (Tex.Civ.App.1911, writ dism'd).

A suit to recover money advanced under a contract is not a suit on a sworn account. The trial court properly overruled appellant's motion for summary judgment. Appellant's point of Error No. 6 is overruled.

All of appellant's points of error have been considered and all are overruled. The judgment of the trial court is affirmed.

MURRAY, J., did not participate in the disposition of this appeal.