AARON L. BLOCK V. AETNA CASUALTY & SURETY COMPANY.

No. 7802. Decided February 11, 1942.
Rehearing overruled March 11, 1942.
(159 S. W., 2d Series, 470.)

*E. M. Critz,* of Coleman, *Eli Goldstein,* of San Antonio, *Smith & Smith,* of Anson, for plaintiff in error.

The Court of Civil Appeals erred in holding that at the time of plaintiff's injury he was not engaged in the usual business of his employer. United States Fidelity & Guaranty Co. v. Archer, 87 S. W. (2d) 281; Texas Employers v. Owen, 298 S. W. 542; Texas Employers v. Moyers, 69 S. W. (2d) 777.

*Ratliff & Worrell, Thomas R. Smith,* both of Colorado City, for defendant in error.

The usual trade or business of L. Zweig, by whom plaintiff was employed, was that of a dry goods merchant, and plaintiff having been injured while directing certain party as to where to unload a trailer full of junk, he was not engaged in the usual course of the trade, occupation or business of his employer, and his injury was not compensable within the meaning of Article 8309 of the Revised Statutes. Georgia Casualty Co. v. Hill, 45 S. W. (2d) 566; Texas Emp. Ins. Assn. v. Wright, 97 S. W. (2d) 171; Hall v. Traders & Gen. Ins. Co., 103 S. W. (2d) 390.

MR. CHIEF JUSTICE ALEXANDER delivered the opinion of the Court.

This is a workmen's compensation case. L. Zweig, operating under the trade name of Hub Dry Goods Company, was the employer, Aaron L. Block the injured employee, and Aetna Casualty & Surety Company the compensation insurance carrier. The award of the Industrial Accident Board was against Block, but the judgment of the district court was in his favor. The Court of Civil Appeals reversed the judgment of the district court, and rendered judgment for the insurance carrier. 142 S. W. (2d) 445. Block brings error.

Zweig owned and operated a dry goods store in the town of Anson, Jones County, Texas. Block was employed by Zweig as manager of this store. The store was operated in a building which consisted of the main store room, where the retail and dry goods mercantile business was conducted, and a warehouse or room used in connection with the dry goods business. Both the main store room and the warehouse were part of the same building, and both were under one roof. The warehouse or room was to the back of the dry goods store room. Block was employed by Zweig as manager of the above dry goods business, but his contract of employment contemplated that he would also discharge the duties of a clerk.

After the compensation insurance policy in question had been issued, Zweig decided to engage in the business of buying and selling scrap metals,—commonly known as the junk business. This junk business was conducted in the warehouse or room above described. It is the contention of the insurance company that Block was working as an employee in the junk business at the time he was injured, and that the policy did not cover the employees who were engaged in that department.

Block was required to perform certain duties in regard to the junk business. These duties were simply to appraise the junk and show the seller where to unload it. In this connection Block testified: "Well, the part that I had was to appraise any load that came in, just set a certain price; and that was the only thing I had to do with it, outside of telling whoever brought it where to unload it."

On the afternoon of March 1, 1937, the Mayfield boys drove up at the back of Zweig's warehouse with a trailer load of

junk iron. The trailer was attached to an automobile. One of the Mayfield boys went to the front end of the main dry goods store and found Block engaged in discharging his duties as manager and clerk. Block went with the Mayfield boy to the back end of the warehouse, told the Mayfields what he would give for the junk, and showed them where to unload it in the back end of the warehouse. When Block showed the Mayfields where to unload the junk in question they drove their car, with the trailer attached, into the warehouse. They then unloaded the junk at the place directed by Block. They then took the trailer loose from the automobile and pushed it out of the warehouse by hand, in order to get the automobile out. At this time Block was standing in the alley at the back of the warehouse, talking with one of the Mayfields,—the subject of the conversation not shown. After the trailer had been pushed out of the warehouse, the Mayfields attempted to get the automobile out on its own power. While such operation was in progress a plank in the floor of the warehouse broke under the car, and when the moving back wheel of the car came in contact with such broken plank it, the wheel, spun and threw or propelled the plank against Block's leg, thereby very seriously injuring him. At the time Block was injured he had already appraised the junk and designated to the Mayfield boys where it should be unloaded. At the time he was injured he was simply standing in the alley, next to the building, talking with one of the Mayfields. As already stated, it is not shown what the subject of this conversation was.

Under the above record, the jury found that Block was injured while engaged in the usual course of his employment for L. Zweig.

The coverage of the compensation insurance policy here involved is stated in the policy as follows:

"All business operations, including the operative management and superintendency thereof, conducted at or from the location and premises defined above as declared in each instance by a disclosure of estimated remuneration of employees under such of the following divisions as are undertaken by this employer, '(1) All industrial operations upon the premises, (2) All office force, (3) Operations not on the premises.'

"Kind of risk 'Store Risk Retail N. O. C.' "

As we interpret it, the opinion of the Court of Civil Appeals holds that Block cannot recover on the above policy of compensation insurance, because it did not cover the business or circumstances under which Block was injured. In this connection, we interpret the opinion of the Court of Civil Appeals to hold: That the insurance policy here involved only covered Sweig's retail store business; that the business of buying and handling junk was not a part of such retail store business, but an entirely different and more hazardous one, and that Block was injured while he was engaged in the course of his employment in connection with the junk business, and not while he was engaged in the course of his employment in connection with the retail store business.

In our opinion, even if we should concede that this compensation insurance policy did not cover Zweig's junk business, a question we do not decide, still the record in this case does not conclusively show that Block was injured while engaged in the course of his employment in that regard. On the other hand, the evidence contained in this record is sufficient in law to show that at the time Block was injured he had completed his duties with regard to this junk, and was longer engaged in any transaction relating thereto. We here again call attention to the fact that Block testified that his only duties with regard to Zweig's junk business were to appraise the junk and show the seller where to unload it. From Black's testimony, already detailed, the jury was justified in concluding that he had completed these duties at the time he was injured, and was no longer performing any services in regard thereto.

The brief of the Aetna Casualty & Surety Company, appellant in the Court of Civil Appeals, contains other assignments of error, not passed on by the Court of Civil Appeals; because under the view it took of the case, it was not necessary to pass thereon. Under the view we take of the case, it is now necessary to pass on these assignments.

The judgment of the Court of Civil Appeals, which reverses the judgment of the district court and renders judgment for this insurance carrier, is reversed, and the cause is remanded to the Court of Civil Appeals for further consideration not inconsistent with this opinion.

Opinion delivered February 11, 1942.

Rehearing overruled March 11, 1942.