## Myla Baker v. Earl M. Baker.

No. 8151. Decided, on rehearing, November 1, 1944.
Second Motion for rehearing overruled December 6, 1944.
(183 S. W., 2d Series, 724.)

*Eskridge, Groce & Chiles,* of San Antonio, *Rawlings, Sayers & Scurlock* and *Gillis. A. Johnson, Alfred McKnight* and *.Cantey, Hanger, McMahon, McKnight & Johnson,* all of Fort Worth, for petitioner.

Where in an agreement of settlement of long course of business dealings between petitioner and respondent, evidenced by a number of written instruments, a general release was executed by them and delivered in escrow to respondent's attorney to be held along with the other instruments until respondent procured and delivered to petitioner two-third of the stock of the Gunter Hotel Corporation, all of which had been previously claimed by petitioner, but which respondent failed to do although he was in a position to do so, petitioner was not precluded from establishing by parol evidence the agreement and enforcing its performance. McFarland v. Shaw, 45 S. W. (2d) 193; Merchants Ins. Co. v. Nowlin, 56 S. W. 198; Burke v. Dulaney, 153 U. S. 228, 38 L. Ed. 698; Fowler v. Hays, 1 S. W. (2d) 1097.

*Johnson & Rogers,* of San Antonio, *Vinson, Elkins, Weems & Francis, Croom & Croom* and *Sam G. Gross,* of Houston, *W. O. Gross,* of Mineral Wells, and *Black, Graves & Stayton,* of Austin, for respondent.

It was, error for the Court to hold that proof of the alleged parol agreement did not violate the parol evidence rule; that proof of the alleged oral agreement in respect to the Gunter Hotel Company did not vary or contradict the term of the written release, and that the sole effect of the alleged oral agreement in respect to the hotel stock was to show that no valid and effective contract ever existed and that such evidence did not vary or contradict the terms of the written contract or release. Holland v. Nimitz, 111 Texas 419, 239 S. W. 185; Long v. Long, 133 Texas 96, 125 S. W. (2d) 1034; Harris v. Ferguson, 137 Texas 592, 156 S. W. (2d) 135.

MR. JUDGE FOLLEY, of the Commission of Appeals, delivered the opinion for the Court.

### ON REHEARING.

On the original submission of this cause we delivered an opinion reversing the judgment of the Court of Civil Appeals and affirming that of the trial court. The cause is now before us upon motion for rehearing filed by the respondent, Earl M. Baker. We reach the same conclusions herein as heretofore

announced, but in passing on the motion for rehearing we order our former opinion withdrawn, and in lieu thereof substitute the following for the disposition of the cause and for publication.

This suit was filed by the petitioner, Myla Baker against the respondent, Earl M. Baker, to recover 2/3 of the common stock of the Gunter Hotel Corporation, owner of the Gunter Hotel in San Antonio. In a jury trial in the district court the petitioner recovered judgment. The Court of Civil Appeals reversed such judgment and rendered one for respondent. 169 S. W. (2d) 1017.

For many years prior to the inception of this suit the petitioner and her brother, T. B. Baker, were engaged as partners in the hotel business, first in Kansas, and later in Texas where they accumulated large interests in hotels, farms, ranches and other property. The respondent, Earl M. Baker, is a nephew of petitioner and T. B. Baker. Since his early youth he has been associated with petitioner and T. B. Baker in their business activities and from time to time acquired certain interests of his own. About 1930, or shortly thereafter, the partnership experience financial difficulties, and respondent, with the consent of the partners, assumed greater responsibilities in the management of the business enterprise and acquired in his own name most of the property theretofore held by the partnership. The true character of such arrangement is highly controverted. The petitioner claimed that respondent was holding such property only in trust for the partnership under an agreement between the parties to that effect. The respondent claimed that the property belonged to him since he had paid valuable consideration therefor from his own funds. No specific finding was made on this question in the trial court. However, the Court of Civil Appeals found that the respondent was holding such property for the benefit of Myla Baker and Earl M. Baker, the latter having succeeded to the rights of T. B. Baker. There is no complaint about this finding, and as we view the matter it becomes immaterial.

At any rate some time prior to December, 1938, the parties began negotiations for a settlement or partition of the respective rights of Myla Baker and Earl M. Baker in the assets of the estate. An instrument dated December 1, 1938, was prepared for the parties to sign. This paper included, among other divisions of the property, a stipulation that Earl M. Baker was to receive 1/3, and Myla Baker 2/3, of the stock of the Gunter Hotel Corporation. The petitioner signed the instrument as pre-

pared but respondent refused to do so because it included the division of the Gunter stock. At that time the stock was held by and in the name of Earl M. Baker and other co-trustees for the benefit of a creditor of the corporation, the Gunter Hotel being heavily incumbered. A few days later negotiations were reopened by the parties through their attorneys, which culminated in the preparation in writing of another settlement or partition agreement dated December 9, 1938, but which was not executed until December 11, 1938, when the parties and their attorneys met in Fort Worth for the purpose of making. a settlement..By consent of the parties no provision was included in the latter instrument with reference to the stock of the Gunter Hotel Corporation. The petitioner introduced evidence to the effect that at the time the second instrument was executed respondent orally promised to deliver 2/3 of such stock but requested that no mention be made of it in the written agreement because it was then held in trust as aforesaid and he was not in position to procure or deliver it. This evidence was strongly controverted by respondent. The partition agreement was executed by respondent and his wife, Gladys Whorton Baker, as parties of the first part, and petitioner as party of the second part. It was therein agreed that on or before December 19, 1938, first parties would convey to second party all or portions of certain holdings in real estate in various counties in Texas, an undivided 1/2 interest in the minerals of forty acres of land in Aransas County, and all of the grantors' interest in WFAA radio stock. The petitioner in turn agreed to convey to respondent and his wife the Crystal Plant in Mineral Wells, the Piedmont Hotel property in Mineral Wells, and 8100 shares of stock in the Resort Hotel Company, owner of the Baker Hotel in Mineral Wells. The Piedmont Hotel property consisted merely of the right of petitioner to purchase such hotel under a contract with the City National Bank of Mineral Wells, which right had theretofore been transferred by written assignment from petitioner to the Resort Hotel Company. About 70 per cent of the stock of the latter company was owned by respondent and about 10 per cent thereof by petitioner. At the time of the execution of the partition agreement petitioner possessed no interest in the Piedmont Hotel property except such as she might have claimed indirectly as owner of the 8100 shares of stock in her assignee, the Resort Hotel Company, and thus the transfer of this stock to respondent, which was all she owned, carried with it all her interest in the Resort Hotel Company, including her remote interest in the Piedmont Hotel property.

Simultaneously with the execution of the partition agreement the parties executed fifteen conveyances or agreements,

which included all the property mentioned in the partition agreement except the Piedmont Hotel property, the WFAA stock, and the 8100 shares to stock in the Resort Hotel Company. Since petitioner had divested herself of all her interest in the Piedmont Hotel property, as above stated, no further executions were necessary with reference to it. The WFAA stock and the 8100 shares in the Resort Hotel Company were transferred by written endorsement. Also, as a part of the settlement, respondent surrendered to petitioner 2230 shares of stock in the Citizens Hotel Company, which stock was not specifically mentioned in any of the written instruments. It was in petitioner's name and belonged to her, but had been held by respondent as collateral security for petitioner's overdraft of her account at the Baker Hotel in Mineral Wells.

The fifteen collateral instruments also embraced five distinct matters which were not mentioned in the general partition agreement. Such obligations were as follows: (1) A trust agreement promising payment of $9,000.00 per year to petitioner for the remainder of her life and pledging 64,000 shares of stock of the Resort Hotel Company to guarantee its payment; (2) a stipulation authorizing payment of the $9,000.00 in monthly installments of $750.00 each; (3) an agreement with warranty to furnish petitioner an apartment in the Baker Hotel at Mineral Wells for the remainder of her life, together with her meals, laundry and maid service without cost to her; (4) an assignment of 2/3 interest in the unpaid balance of a note given by Edson Realty Company and Wilson Holding Company in the sum of $8,000.00; and (5) a mutual agreement between the parties insuring correct description of the lands conveyed to each other.

Also, contemporaneously with the execution of the several instruments above enumerated, the parties executed a mutual release which furnishes the chief background for the present controversy. The provisions of this release which are here material are as follows:

"Whereas, on the 9th day of December, 1938, a contract was entered into by and between Earl M. Baker and Gladys Whorton Baker, as first party, and Myla Baker, as second party, for the purpose of exchanging certain properties therein mentioned and executing conveyances thereto, respectively; and,

"Whereas, it is contemplated by all of the parties hereto that when the terms of said contract are complied with that it shall constitute a full, final, and complete release, each to the other, respectively, from all claims, demands, choses in action, suit, or other right of action of every character and description,

whether enumerated herein or not, save and except the rights and benefits accruing to Myla Baker under a certain trust agreement executed by Earl M. Baker, December 10, 1938.

"Now, therefore, in consideration of the foregoing premises, and the respective rights and benefits passing to each of said parties, respectively, under the terms of said contract, we enter into the following release agreement:

.I.

"I, Myla Baker, do hereby release Earl M. Baker and Gladys Whorton Baker from any and all claims, demands, choses in action, or other right of action, of every character and description, past, present, and future, real or fancied, whether the same be enumerated herein or not, growing out of any trade, deal, joint adventure, partnership, or other character of dealing, business or otherwise (except as to my rights to the properties mentioned in said contract and my right as beneficiary under said trust agreement), and by these presents do acknowledge full, final, and complete settlement and payment in full thereof, and that I have no right, title, interest, or claim to any property, personal or real, now in the name of Earl M. Baker and/or Gladys Whorton Baker."

The above stipulations were followed in the same instrument by a similar release from respondent and his wife to petitioner.

All the written instruments were executed on December 11, 1938, in the office of petitioner's attorney in Ft. Worth. The instruments were thereupon delivered to the attorneys for the respective parties. It is the contention of petitioner that the mutual release was conditionally executed and delivered to respondent's attorney subject to a contemporaneous oral agreement that the transaction was not to be complete, and the release was not to be recorded or to take effect, until respondent performed his oral promise to deliver to petitioner 2/3 of the stock of the Gunter Hotel Corporation. The evidence was sharply controverted as to the existence of the oral agreement and as to the conditional execution and delivery of the release, but such facts issues were resolved in favor of the petitioner.

Within a few weeks after the instruments were executed respondent secured a release of the Gunter stock from the mortgage company and was then in position to deliver 2/3 thereof to petitioner, but refused to do so, which conduct precipitated the filing of this suit.

The material allegations of petitioner set forth substantially the same facts above outlined, including the oral agreement for the delivery of the Gunter stock, and sought judgment for 2/3 of the stock of the Gunter Hotel Corporation, asking that the release be reformed so as to speak the true agreement or that the same be set aside. In the alternative she asked for damages for the value of the stock.

In the trial court the jury made the following findings: (1) That on December 10, 1938, respondent orally agreed to subsequently deliver 2/3 of the Gunter stock to petitioners; (2) that respondent did not at that time in good faith intend to perform such agreement; (3) that petitioner, in signing the instruments, was induced to do so by the agreement of respondent to deliver such stock; and (4) that on the occasion of signing the instruments it was agreed by the respective attorneys of petitioner and respondent that the release signed by petitioner would not become effective until the Gunter stock was delivered to her. Upon such verdict the trial court rendered judgment that petitioner recover title to and delivery of 2/3 of the stock of the Gunter Hotel Corporation and that respondent be compelled to transfer the stock to her. There was no order in the judgment reforming or cancelling the release. It is the position of petitioner that such release should become effective after the delivery of the stock and thus a reformation or cancellation becomes unnecessary.

In reversing the judgment of the trial court and rendering judgment for respondent the Court of Civil Appeals held that the execution and delivery of all the instruments constituted one indivisible act; that if the proposed condition was enforced as to the release it must necessarily nullify the entire transaction; that assuming the condition existed, since the contract was indivisible, the petitioner waived the condition and ratified a complete delivery of all the instruments by accepting some of the benefits of the transaction; and that in the absence of cancellation of the release on the ground of fraud, the parol evidence rule prohibits the alteration of the terms of the release. In all of these holdings we think the Court of Civil Appeals was in error.

From the facts of this case it appears evident to us that the transaction as a whole was not so integrated that the parol agreement might not affect the release alone without reference to the various other instruments. As above stated, the general contract of settlement or partition, referred to by the Court

of Civil Appeals as the "master agreement," did not dispose of all the property rights of the parties. It contained no reference to the trust agreement, the hotel apartment for petitioner, the mutual release, the assignment of a portion of the note for $8,000.00, or of the mutual agreement to correct errors, if any, in the description of lands conveyed. The stock in the Citizens Hotel Company was not mentioned in the general contract nor in any of the other instruments, yet the testimony shows the respondent delivered such stock to petitioner in the settlement. The deeds conveying the real estate do not show that they were executed as a part of a settlement agreement. Each recites a cash consideration of $10.00 and other good and valuable consideration. Each of the contemporaneous instruments, other than the release, purports to be a separate document supported by an independent consideration. Without the release it is only by parol that the full extent of the settlement agreement may be determined. Although it must be conceded that the release, when effective, is sufficient to include the property herein in controversy, such instrument has no force until it becomes operative. Until such time as it becomes effective there is nothing inconsistent with petitioner's accepting benefits under the other instruments and still insisting on the performance of the oral contract to deliver the Gunter stock.

■ We are of the further opinion that, regardless of the absence of cancellation of the release on the ground of fraud, there was no violation of the parol evidence rule in proving the oral agreement. The rule excluding extrinsic evidence as to a written instrument has no place in any inquiry where the court has before it an instrument not then effective. 32 C. J. S. 857, Sec. 935; Moore v. Wilson, 138 S. W. (2d) 1099, writ refused; Donley v. Tindall, 32 Texas 43; Watson v. Rice, 166 S. W. 106, writ refused. The rule that parol evidence is inadmissible to contradict or vary the terms of a written contract applies only to a written contract in force as a binding obligation. Parol evidence is always competent to show the non-existence of a contract or the conditions upon which it may become effective. 20 Am. Jur. 955, Sec. 1094; 3 R. C. L. 869, Sec. 53; Morris v. Logan, 273 S. W. 1019, writ refused; Helmke v. Prasifka, 17 S. W. (2d) 463, writ refused; Shepherd v. Woodson Lumber Co., 63 S. W. (2d) 581. In Holt v. Gordon, 107 Texas 137, 174 S. W. 1097, this Court announced through Justice Phillips that, with the exception of a deed to land delivered to the grantee, it may be shown by parol testimony that an ordinary written instrument was executed under an agreement that it was not to become effective except upon certain conditions or contingencies. That is precisely what

the petitioner did in this case. The effect of the parol testimony, and the finding thereon, is not to vary the terms of a binding instrument, but merely, as a condition precedent, to postpone the effective date of the instrument until the happening of a contingency, which in this instance was the delivery of the stock. Such procedure, under the facts in this case, is not an oral contradiction or variation of the written instrument but goes to the very existence of the release and tends to show that no valid and effective release ever existed, at least not until the fulfillment of the condition. 32 C. J. S. 857, Sec. 935.

The respondent insists that the rule admitting parol evidence to show the non-existence of the release is not applicable because the alleged parol agreement is inconsistent with the terms of the written release, and hence the parol proof was not admissible. Of course, if the "alleged condition precedent is inconsistent with the written instrument parol evidence thereof is inadmissible." 32 C. J. S. 859, Sec. 935; Williston on Contracts (Rev. Ed., Sec. 634. However, we are of the opinion the oral agreement does not contradict the terms of the written release. There is nothing in the release which is requgnant to the postponement of its effective date until the happening of some contingency, nor of its postponement until the fulfillment of the precise condition asserted by petitioner. Of the contrary, an examination of the language of the release will reveal that the parties did not intend that it should become effective immediately. The first paragraph of the instrument recites that on the .9th day of December, 1938, a contract, not designated as written or oral, was entered into between the parties for the purpose of exchanging certain properties therein mentioned "and executing conveyances thereto." This language indicates that the conveyances and other collateral agreements formed a part of the "contract," though some of them were not included in the partition agreement. And such paragraph, and the release as a whole, is not conclusive that the "contract" was entirely in writing. The second paragraph of the release provides that, "Whereas, it is contemplated by all the parties hereto that when the terms of said contract are complied with that it shall constitute a full, final, and complete release * * *." This language clearly indicates that something remained to be done by the parties before the release became effective. Thus, the release by its own terms becomes conditional on some contingency not otherwise disclosed by it or the other written instruments. It was therefore necessary and permissible to resort to parol evidence to determine the nature of this contingency. 32 C. P. S. 853, Sec. 930.

In view of the language quoted, the parties must necessarily have had in mind some act or thing not yet accomplished or performed at the time the partition agreement and the collateral instruments were executed. They could not reasonably have had in contemplation the land, the personal property or the property rights designated in the written instruments. The title to the real estate passed under the deeds and no property rights remained unexecuted with reference to it. The title to the shares of stock mentioned in the partition agreement, and that of the Citizens Hotel Company which rested entirely in parol, passed to the respective parties by the endorsement and delivery of such stock. Other than the land and the shares of stock no property rights embraced in the written instruments continued in an executory state except the trust agreement to pay petitioner $9,000.00 per year for life and the stipulation to furnish her the hotel apartment for life. The agreement for the life annuity cannot be considered because it was specifically excepted from the operation of the release. Although the agreement for the hotel apartment was not excepted from the release, no contention is made that it was affected by it in any manner, and, indeed, no such contention could reasonably be asserted since the obligation was a continuing one for the remainder of petitioner's life. Consequently, having eliminated from our consideration all the property embraced in the written instruments, the inquiry is: What did the parties mean when they stipulated that "when the terms of said contract are complied with that it shall constitute a full, final, and complete release"? This question is definitely answered by the record presented. The petitionner alleged and proved, and the jury found, that the effective date of the release was postponed until the delivery of the Gunter stock. There being nothing to the contrary in the release, the oral condition does not contravene its terms but is entirely consistent therewith, and merely explains the uncertain language of the instrument which is otherwise unrevealed. We reiterate that proof of such condition was complete and there was no error in its admission.

We are still of the opinion we entered the correct judgment on the original submission of this cause, and the same shall not be disturbed. It is ordered that respondent's motion for rehearing be overruled.

Opinion adopted by the Supreme Court November 1, 1944.

## ON SECOND MOTION FOR REHEARING.

PER CURIAM:

■ By his assignments of error and briefs in the Court of Civil Appeals, respondent, Earl M. Baker, presented to that court the contention that the evidence in this record is insufficient to support the findings of the jury to certain special issues submitted in the charge of the trial court; and, further, that such findings are against the great weight and preponderance of the evidence. The Court of Civil Appeals reversed and rendered this case on a ruling of law, and therefore did not pass on these assignments. The Court of Civil Appeals has exclusive jurisdiction to pass on the question of the sufficiency of evidence, for the purpose of determining whether or not it will reverse and remand to the district court for a new trial. Harris v. Ferguson, 137 Texas 582, 156 S. W. (2d) 135; Long v. Long, 133 Texas 96, 125 S. W. (2d) 1034; Scroggins v. City of Harlingen, 131 Texas 237, 114 S. W. (2d) 583; Roberts v. Texas & P. Ry. Co., 142 Texas 550, 180 S. W. (2d) 330; Block v. Aetna Casualty & Surety Co., 138 Texas 420, 159 S. W. (2d) 470; Parks v. San Antonio Traction Co., 100 Texas 222, 94 S. W. 331; Ellis v. Brooks, 101 Texas 591, 102 S. W. 94; McKenzie Construction Co. v. City of San Antonio, 131 Texas 474, 115 S. W. (2d) 617; Henry v. Kirby Lumber Co., 110 Texas 218, 215 S. W. 451.

We have read and carefully considered all other questions presented in the above-mentioned motion for rehearing, and still adhere to the views expressed in our substituted opinion.

It is ordered that the judgment of this Court and the judgments of the Court of Civil Appeals and district court heretofore rendered in this cause be set aside, and this cause is remanded to the Court of Civil Appeals with the following instructions:

1. If the Court of Civil Appeals finds the evidence insufficient to support the verdict of the jury in the trial court, it will reverse the judgment of the trial court and remand this cause thereto for a new trial.

2. If the Court of Civil Appeals finds the evidence sufficient to support the verdict of the jury, it will affirm the judgment of the trial court.

Opinion delivered December 6, 1944.