**Johnny Ray KEEL et ux., Appellants,**

**v.**

**Josephine E. HOGGARD, Appellee.**

**No. 6034.**

Court of Civil Appeals of Texas, Waco.

Nov. 8, 1979.

F. Ben Selman, Jr., Waco, for appellants.

John D. Cabaniss, Waco, for appellee.

## OPINION

JAMES, Justice.

This is a suit to collect the unpaid balance due on a vendor's lien note. Plaintiff-Appellee Mrs. Josephine E. Hoggard brought this suit against her nephew Johnny Ray Keel and his wife, Judy Bathea Keel, Defendant-Appellants herein, to collect the unpaid balance of $6670.00 plus 10% attorney's fees as called for in a $12,000.00 vendor's lien note executed by the Keels and payable to Mrs. Hoggard.

On November 29, 1968, Plaintiff Mrs. Hoggard, joined pro forma by her husband, conveyed to the Keels by general warranty deed certain property in the City of Waco, Texas, to wit, Lot 3 of Block "I" of the West End Addition to said City. The deed recited the reservation by grantor of a vendor's lien note in the principal amount of $12,000.00 of even date with said deed, bearing no interest, payable in monthly installments of $75.00 each on the first day of each month, the first such payment having been due on January 1, 1969, and payable

$75.00 on the first day of each succeeding month thereafter until all of said note shall have been paid in full. On May 16, 1972, Plaintiff Mrs. Hoggard executed a written release of lien in standard form to the Defendants Keel, reciting payment in full of said $12,000.00 note. Said release was filed for record on May 16, 1972, at 3:25 P.M., this being the same day upon which the release was dated and executed.

Plaintiff Mrs. Hoggard alleged that the Keels fraudulently induced her to execute the release in question at a time when there was a substantial balance due her upon the note, and thereupon she prayed for a judgment for the unpaid balance of the note in the amount of $6670.00 plus 10% attorney's fees, together with a foreclosure of the asserted vendor's lien against the subject realty. Defendants Keel answered by general denial, not guilty, the four year statute of limitations, and laches.

Trial was had before the court without a jury after which the trial court awarded Plaintiff Mrs. Hoggard a judgment against the Defendants Keel for $6670.00 plus $667.00 attorney's fees and costs, without any foreclosure of lien. No findings of fact or conclusions of law were made by the trial court.

Defendants Keel assail the trial court's judgment upon six points of error as follows: (1) there are no pleadings to support the judgment which impliedly cancelled, set aside, or reformed the release of lien and its accompanying acknowledgement of full payment of the vendor's lien note; (2) and (3) the evidence is legally and factually insufficient to support the trial court's judgment which impliedly cancelled, set aside, or reformed the release of lien and its accompanying acknowledgement of full payment of the vendor's lien note; and (4), (5), and (6) plaintiff's action is barred by the four year and two year statutes of limitations, and by laches. We overrule all of Appellants' points and contentions and affirm the trial court's judgment.

We revert to Appellants' first point, to wit, that there are no pleadings to support the trial court's judgment which impliedly

cancelled, set aside, or reformed the release of lien and its accompanying acknowledgement of full payment of the vendor's lien note in question. Plaintiff's trial pleadings alleged that "on May 16, 1972, Defendants fraudulently induced Plaintiff to execute a full release of the $12,000.00 recorded vendor's lien, on condition that Defendants would continue to make payments on the note as heretofore agreed, and that Defendants would not record the release until after Plaintiff's death. Defendants then recorded said release and have failed and refused to make payments on said note, and there is now due and owing Plaintiff the sum of $6670.00 plus attorney's fees of ten percent of the principal now due, and Plaintiff has a valid vendor's lien against the property herein described." Then in the prayer, Plaintiff prayed "_ _ _ that on final hearing hereof, Plaintiff have judgment for foreclosure and attorney's fees plus costs of court, and that all necessary writs issue. In the alternative, Plaintiff prays that she recover the sum of $6670.00 due her on the note in question, plus attorney's fees of 10% on the principal now due, plus costs of court."

 The Defendant-Appellants did not file any special exceptions to Plaintiff-Appellee's pleadings. We hold that in this state of the record the Plaintiff-Appellee's pleadings were sufficient to support the trial court's implied finding that, as between the parties, the release in question was of no force and effect, insofar as the existence of the debt (unpaid balance of the note) was concerned. If there had been any defect, omission or fault in such pleadings of form or of substance, it was Appellants' duty to file exceptions thereto, and therefore any defect in the pleadings of form or of substance was waived by Appellants. Rule 90, Texas Rules of Civil Procedure; *Texas Osage Coop. Royalty Pool v. Kemper* (Galveston CA 1943) 170 S.W.2d 849, writ refused; *Chandler v. Hendrick Memorial Hospital* (Eastland CA 1958) 317 S.W.2d 248, NRE.

Appellants' second point asserts that there is no evidence to support the trial court's judgment impliedly cancelling, setting aside or reforming the release of lien in question and its accompanying acknowledgement of full payment of the vendor's lien note. Appellants' third point complains that such implied findings of the trial court are so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust, under the doctrine of *In re King's Estate* (Tex.1951) 150 Tex. 662, 244 S.W.2d 660. We overrule these points of error.

Plaintiff-Appellee Mrs. Hoggard is the aunt of the Defendant-Appellant Johnny Ray Keel. On November 29, 1968, by general warranty deed, she sold and conveyed to defendants Mr. and Mrs. Keel the house and lot in question for a recited consideration of ten dollars cash and the execution by the Keels of the $12,000.00 vendor's lien note payable to Mrs. Hoggard, bearing no interest, and payable $75.00 on the first day of each month beginning January 1, 1969. After the Keels became the owners of the place, they made their payments in an irregular manner, having made such payments to a bank as requested by Mrs. Hoggard. A systematic and accurate record was made of all of such payments, and there is no dispute between the parties but that first and last the Keels paid a total of $5330.00 on the note, with the remaining $6670.00 having been unpaid.

Along about May 16, 1972, and prior thereto, Mrs. Hoggard and her husband were experiencing marital difficulties, during which times they were having disagreements over property. Mrs. Hoggard testified that the Keels were afraid that Mrs. Hoggard's husband might take their place away from them if "anything happened" to Mrs. Hoggard; that the Keels kept after her about this, and she (Mrs. Hoggard) wanted to protect them. Mrs. Hoggard further testified that after all of this pressure on her, she went to her lawyer to see about getting a release of the vendor's lien drawn up. Her lawyer advised against it; but nevertheless, Mrs. Hoggard disregarded her lawyer's advice and had the release drawn on an oral agreement with the Keels

that the release would be kept by the Keels in Mrs. Hoggard's bank box, and that the Keels were supposed to leave the release in such bank box until after Mrs. Hoggard's death, so that the Keels "would (then) get it and give it to anyone who tried to take the place away from them." Mrs. Hoggard further testified that the Keels were supposed to continue their payments until the note had been paid. Mrs. Hoggard gave the Keels the key to her bank box. The release of lien was signed and acknowledged by Mrs. Hoggard on May 16, 1972, and recites that it is made "in consideration of the payment in full" of the $12,000.00 vendor's lien note in question. Mrs. Hoggard further testified that without her knowledge, the release was filed for record at 3:25 P.M. on May 16, 1972, the same day she executed such release. Thereafter, the Keels continued to make payments to Mrs. Hoggard, essentially in the same irregular manner as before, until December 1, 1976. The December 1, 1976, payment was the last payment the Keels made. Mrs. Hoggard testified that she first found out about the release being filed for record in December 1976 or in February 1977, at or about the time the Keels quit paying altogether. On May 19, 1977, Mrs. Hoggard filed suit against the Keels.

Mr. Keel testified that at or about the time the release was signed, Mrs. Hoggard came to the home of the Keels to eat supper, on which occasion she brought "an armfull of papers, and the key to her bank box, and handed them to the Keels and said, 'There's you kids' house, you don't have to worry about it no more, about nobody taking it from you.'" On this occasion, Mr. Keel testified that "me and my mother and Judy and the kids" were present. Mr. Keel's mother was Mrs. Hoggard's sister. Mr. Keel further testified that at no time did Mrs. Hoggard ever tell the Keels that they were not obligated to pay the balance of the note. That is to say, that Mrs. Hoggard never did tell them that they were not required to keep paying on the note. Mr. Keel further testified that he never did ask Mrs. Hoggard to sign the release. He said he "kept paying her" after the release,

but felt that he had no obligation to pay. On cross-examination Mr. Keel was vague on why he continued to make these payments from May 16, 1972, until December 1, 1976, saying at one point in effect that he made these payments "out of the goodness of (his) heart," and at another point that he knew Mrs. Hoggard needed the money, because "Don (Mrs. Hoggard's husband) was spending all her money."

Mrs. Keel testified that the reason Mrs. Hoggard executed the release was because "her and Don was having trouble and that (she) was afraid that he was going to step in and try to take it over," but that she (Mrs. Keel) and Mr. Keel never asked Mrs. Hoggard to sign the release. Mrs. Keel testified that on the occasion in question at suppertime that Mrs. Hoggard "said they (Mrs. Hoggard and her husband) were having a lot of trouble and he (Mr. Hoggard) wanted her to come down here and to make us (the Keels) refinance the house and pay her off and she said in the will, it states that the house was willed to you jointly (to the Keels) and that she didn't want Don to come up here and give her any static about it." Mrs. Keel further testified that on other occasions Mrs. Hoggard told her that they (the Keels) were under no obligation to pay her, but that they (the Keels) kept making the payments after the release "because I felt like I had an obligation to do it." She said Mrs. Hoggard told her, "By rights, you don't have to pay me," but that she did ask them (the Keels) to continue to make the payments. During the time of her separation from her husband, Mrs. Hoggard made her home in Waco with her sister, Mrs. Frances Mace, who was Mr. Keel's mother.

Mrs. Frances Mace, who prepared supper on the evening in question, testified that "Jo (Mrs. Hoggard) came in and gave title to the house and said, 'Now, here's the title to the house and if anything happens to me, then Don cannot come in and take the house _ _ _ away from you.'" Mrs. Mace further testified: "The kids and all the family always thought that Don would come in and try to take the house from them."

Appellants Keel argue that since Appellants pleaded and proved the release which recited that the $12,000.00 note had been paid in full, that such written release is conclusive on the issue that the note had been paid, and that parol evidence is not admissible to show that said note had not been paid. We do not agree.

Here, Appellee Mrs. Hoggard proved that the Keels had paid $5330.00 on the note, leaving an unpaid balance of $6670.00, all of which was not denied by the Appellants Keel. This being so, parol or extrinsic evidence is admissible to show what part of the consideration had not been in fact paid.

We are familiar with the rule that parol evidence is not admissible to contradict or vary the terms of written contracts or documents, and when such documents are executed and delivered, they automatically become effective in accordance with the terms and purposes evidenced by the language in which they are written. But there are exceptions to this general rule, and one of those exceptions is that parol evidence may be received to prove that the consideration recited in deeds or other written instruments was not in fact paid. *Lanier v. Faust* (Tex.1891) 81 Tex. 186, 16 S.W. 994, 995; *Cochell v. Cawthon* (Amarillo CA 1937) 110 S.W.2d 636, error dismissed. It has long been recognized that a recitation of consideration which is in the nature of a *receipt* (as in the case at bar) can be explained or contradicted by parol evidence. *Lanier v. Faust,* supra. The undisputed testimony of both Appellants and Appellee was not that the note had not been paid in full. In other words, the recitation in the release that the note had been paid in full was rebutted by the parol testimony of all parties to the suit.

Defendant-Appellants further contend that Plaintiff-Appellee was required to plead and prove fraud so as to make out a case for cancelling and setting aside the release in order to be entitled to a judgment for the unpaid balance on the note. We overrule this contention, because it is well settled that, as between the original parties, as here, it is not necessary to allege fraud, accident, or mistake in order to show the true consideration for the release. See *Bentley v. Andrewartha* (Austin CA 1978) 565 S.W.2d 590, 592, NRE; *Puckett v. Frizzell* (Tyler CA 1964) 377 S.W.2d 715, no writ, and the cases cited therein on page 721.

Moreover, Mrs. Hoggard's testimony shows that there was a conditional delivery of this release. She testified that she executed the release and gave it to the Keels with the understanding that the Keels would keep it in her bank box and would not file the release for record until after her death, and in this connection she gave them the key to her bank box. In violation of this condition, the release was filed for record at 3:25 P.M. on May 16, 1972, on the very day it was executed by Mrs. Hoggard. Furthermore, Mrs. Hoggard testified that the Keels promised to continue making their payments on the note even though she had executed and given them the release. This testimony was corroborated by the fact that Appellants Keel did continue to pay on the note, albeit intermittently, for more than four years, the last such payment having been made on December 1, 1976. All of this testimony is evidence of a conditional delivery of the release. Our Supreme Court, in *Stephens County Museum, Inc. v. Swenson* (Tex.1974) 517 S.W.2d 257, has held that, even in the case of a deed, the question of delivery is "controlled by the intent of the grantor" and "is determined by examining all the facts and circumstances preceding, attending, and following the execution of the instrument." Also see *Baker v. Baker* (Tex.1944) 143 Tex. 191, 183 S.W.2d 724, 728; *Taggart v. Crews* (Waco CA 1976) 543 S.W.2d 422, NRE.

Evidence of fraud in the transaction involving the execution of the release also supports the judgment in favor of the Appellee. Appellants argue that a showing of fraud is impossible under the facts of this case because there was no showing of a material misrepresentation of fact or intent to deceive at the time of the execution of the release. Appellants properly recite the law and the facts related to actual fraud

but have overlooked the evidence in this case of constructive fraud. Constructive fraud generally relies on a breach of duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. See *Archer v. Griffith* (Tex.1964) 390 S.W.2d 735, 740. Constructive fraud usually arises from a breach of a trust or confidential relationship which equity deems worthy of protection. *Archer v. Griffith*, cited supra. Such confidential relationships are not limited to technical fiduciary relationships such as attorney-client, trustee-cestui, partner-partner, etc., but may also arise from "moral, social, domestic, or purely personal" relationships. 54 Am.Jur. 173, § 225, "Trusts," quoted in *Fitz-Gerald v. Hull*, 150 Tex. 39, 237 S.W.2d 256, and in *Thigpen v. Locke* (Tex.1962) 363 S.W.2d 247. Also, see *Fain v. Beaver* (Waco CA 1972) 478 S.W.2d 816 NRE, and the cases therein cited on page 819.

■ The record in this case provides ample evidence to support a finding of constructive fraud based on a breach of a confidential relationship and such evidence is clearly supportive of the judgment in this case. For example, here Mrs. Hoggard was the aunt of Mr. Keel, Mr. Keel's mother being Mrs. Hoggard's sister; the parties were close in their relationship, since Mrs. Hoggard visited in the Keel home often, and made her home with Mr. Keel's mother in Waco, Texas, when she (Mrs. Hoggard) separated from her husband; Mrs. Hoggard sold the Keels the place in question for a $12,000.00 note which bore no interest; Mrs. Hoggard trusted the Keels by giving them the release, thereby giving up her lien on the property, with their promise to continue to make the payments; she testified that she had left the place to the Keels in her will; she gave them the key to her bank box and requested that they keep the release there until her death, at which time they could record the release. Appellants' points of error 1, 2, and 3 are overruled.

■ Appellants' fourth point asserts the trial court erred in impliedly setting aside the release of lien because any action to set aside that instrument in writing is barred by the four year statute of limitation. We overrule this contention. Under our view of the case, as hereinabove expressed, it was not necessary for the Plaintiff-Appellee to plead and prove a cause of action for fraud to set aside the release in order to be entitled to sue for the unpaid balance of the note. This suit is actually to recover the amount due on a written note, and is governed by Article 5527, Section 1, Vernon's Texas Civil Statutes, which is a four year statute of limitation. For an installment note as in the case at bar, the law is well settled that the statute of limitation begins to run on each payment when it becomes due. See *Goldfield v. Kassoff* (Houston 14th CA 1971) 470 S.W.2d 216, no writ, and the cases cited therein on page 217. This was a $12,000.00, note without interest, payable $75.00 per month beginning January 1, 1969. It is undisputed that the Keels paid $5330.00 on the note. A mathematical calculation shows that by paying $5330.00 to Plaintiff-Appellee, Defendant-Appellants were paid through November 1, 1974, with $5.00 to spare. See *Prowell v. Berry-Barnett Grocery Co.* (Waco CA 1970) 462 S.W.2d 53, writ refused, for rule concerning application of payments. Plaintiff-Appellee filed this suit May 19, 1977, well within the four years allowed by law.

■ Defendant-Appellants by their fifth point assert that Plaintiff-Appellee's suit for damages for fraud is barred by the two year statute of limitation. However, Defendant-Appellants did not plead the two year statute of limitation, and now raise same for the first time on appeal, and have therefore waived same. Even so, this point is without merit, as it is undisputed that Plaintiff-Appellee did not discover the fraud in the filing of the release until December 1976, less than six months before she filed suit. See *Courseview v. Phillips Petroleum Co.* (Tex.1957) 158 Tex. 397, 312 S.W.2d 197.

We have carefully considered all of Appellants' points and contentions, and over-

rule same as being without merit. Judgment of the trial court is accordingly affirmed.

AFFIRMED.