Randall KING, D/B/A King Air
Service, Appellant,

v.

Kirk FORDICE, Appellee.

No. 05–88–00654–CV.

Court of Appeals of Texas,
Dallas.

June 22, 1989.

Rehearing Denied Sept. 25, 1989.

Calvin C. Otte, Dallas, for appellant.

D. Ronald Reneker, Dallas, for appellee.

Before ENOCH, C.J., and ONION[1]
and BISSETT[2], JJ.

ONION, Justice.

This is a suit for breach of contract involving the sale of an airplane. Appellant-plaintiff Randall King, d/b/a King Air Service, appeals from a take-nothing judgment following a jury trial.

In his initial point of error, King urges the "trial court erred by allowing parol evidence concerning additional terms and conditions of a written contract over the objections of the plaintiff, in violation of the parol evidence rule."

### FACTS

The record reflects that appellee-defendant Fordice lived in Vicksburg, Mississippi, where he was president of and operated a large construction company. King operated King Air Services in Dallas, buying and selling airplanes. In the fall of 1982, Fordice advertised for sale a Cessna 340 aircraft. Some time before November 9, 1982, King telephoned Fordice about the Cessna 340. In one of their telephone conversations, Fordice indicated to King his interest in purchasing a Cessna 414 with certain equipment, and possibly trading in the Cessna 340 on such purchase. During one of the telephone communications, King described to Fordice a Cessna 414 available

1. The Honorable John F. Onion, Jr., Presiding Judge, Retired, Court of Criminal Appeals, sitting by assignment.

2. The Honorable Gerald T. Bissett, Justice, Retired, Court of Appeals, Thirteenth District of Texas, at Corpus Christi, sitting by assignment.

for purchase, but admitted he did not reveal the airplane's location because he did not want Fordice to "go around him" and acquire the plane.

It was King's testimony that by mailgram on November 9, 1982, he forwarded to Fordice an offer to sell the Cessna 414 for $400,000 and to accept as a trade in for $150,000 Fordice's Cessna 340 if it was "in good condition." He related that on the same date Fordice, by mailgram, accepted the offer.

Fordice presented a different version of the events, while Fordice agreed that he expressed an interest in seeing the Cessna 414 described to him by King, he testified over objection that on November 9, 1982, King called him and told him that the airplane in question was "located far away" and that in order for King to get the airplane to Dallas for inspection there needed to be an exchange of mailgrams. Fordice further testified that King dictated the wording of the mailgram that Fordice was to send back to King in response to King's mailgram. Fordice related he agreed to the exchange of mailgrams so that the plane would be brought to Dallas for his inspection; that there was no intention that the mailgrams would constitute a binding contract to purchase for $400,000.00 a plane sight unseen; that as a business man dealing with contracts he would have never agreed to the contract claimed by King. Fordice related that in accordance with the understanding that the exchange of mailgrams was an inspection ticket and not a binding contract he did not send the $25,000.00 deposit as mentioned in the mailgrams.

When notified by King the Cessna 414 would be at Dallas Love Field on November 12, 1982, Fordice flew there in his Cessna 340. The Cessna 414 was late in arriving. Without King being present, Fordice began an inspection of the plane. His first impression was that the plane was a "dope runner." He found that it carried a Canadian registration and that its temporary registration numbers were taped to the fuselage rather than painted on. No registration establishing ownership was

available, and there was no evidence that a factory warranty was available. It was observed that the engines had logged one hundred hours of flight, which indicated to Fordice that the plane had been flown from 20,000 to 21,000 miles. He had been led to believe the plane was new. The plane had no co-pilot's instruments, no air conditioning, and no RNAV (a navigation aid).

Finishing his inspection and being unable to locate King, Fordice sent King a telex informing him that after inspection he (Fordice) was not satisfied with the plane, setting forth some of the reasons, and that he would not purchase it.

King acknowledged that at the time of his dealings with Fordice that Kenneth Jalbert of Canada was the owner of the airplane. King did not apply for a certificate of registration until November 30, 1982. He testified as to his damages as a result of the breach of the contract by Fordice.

During pretrial, King filed a motion to suppress evidence and in limine to prevent the admission of any parol evidence to vary and expand the terms of the written contract between the parties evidenced by the exchange of mailgrams. The trial court overruled the motion and, as mentioned, during trial, overruled King's trial objections to Fordice's oral testimony concerning the mailgrams and his conversations with King.

The court submitted the case to the jury on eleven special issues. Appellant made no objection to the charge. Special issue number one was:

"Do you find from a preponderance of the evidence that the terms and conditions contained in the mailgram exchanged by King and Fordice on November 9, 1982 constituted an agreement between King and Fordice relative to the purchase and sale of the Cessna 414 airplane?"

All the other special issues were conditioned directly or indirectly on an affirmative answer to special issue number one. The jury answered "No" to special issue number one and in accordance with the court's instructions did not answer any of the other special issues. Based on the ver-

dict the court entered a take nothing judgment.

## PAROL EVIDENCE

Apparently relying upon the common law parol evidence rule appellant King argues that the trial court erred in admitting the testimony of Fordice on the issue of the existence and validity of the contract when the contract was final and complete on its face without the right to reject the aircraft upon examination. One expression of the common law rule of parol evidence is found in 36 Tex.Jur.3rd, *Evidence,* § 315 at 13.

"As a general rule, in the absence of fraud, accident, or mistake, extrinsic evidence is inadmissible to vary, add to, or contradict the terms of a valid written instrument that on its face is complete and unambiguous and that has been adopted as the final integration of a legal transcript." *See also Rincones v. Windberg,* 705 S.W.2d 846, 847 (Tex.App.—Austin 1986, no writ); *Wilkins, et al. v. Bain,* 615 S.W.2d 314 (Tex.Civ.App.—Dallas 1981, no writ); *Davis v. Andrews,* 361 S.W.2d 419 (Tex. Civ.App.—Dallas 1962, writ ref'd n.r.e.); 2 R. Ray, *Texas Law of Evidence,* § 1601 (3d ed. 1980).

In *Baker v. Baker,* 143 Tex. 191, 183 S.W.2d 724, 728 (1944), the Supreme Court of Texas made clear that:

The rule that parol evidence is inadmissible to contradict or vary the terms of a written contract applies only to a written contract in force as a binding obligation. Parole evidence is always competent to show the nonexistence of a contract or the condition upon which it may become effective.

More recently in *Bill Shannon, Inc. v. San Clemente,* 724 S.W.2d 941 (Tex.App.—San Antonio 1987, no writ), it was held that testimony that purported· to show that a promissory note was delivered by one party to assist another party in establishing losses for tax purposes and not to evidence a debt was admissible to show that the note

was not a contract and enforceable. *See also Merbitz v. Great National Life Ins. Co.,* 599 S.W.2d 655 (Tex.Civ.App.—Texarkana 1980, writ ref'd n.r.e.); *Ferguson v. Yorfino,* 570 S.W.2d 422 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e.); *Our Fair Lady Health Resort v. Miller,* 564 S.W.2d 410 (Tex.Civ.App.—Austin 1978, no writ); *Taggart v. Crews,* 543 S.W.2d 422 (Tex.Civ.App.—Waco 1976, writ ref'd n.r. e.); *W.K. Ewing Co., Inc. v. Krueger,* 152 S.W.2d 488 (Tex.Civ.App.—San Antonio 1941, writ ref'd w.o.m.); *Simpson v. Milne,* 677 P.2d 365 (Colo.App.1983).

The basic and general common law rule discussed in *Baker, supra,* has traditionally operated outside the scope of the common law parol evidence rule. Evidence is admissible, at least in equity, to show that a writing which apparently constituted a contract was never intended or understood by either party to be binding as such, "or that the writing was a sham and never intended to constitute an enforceable agreement." Sweet, *Contract Making and Parol Evidence: Diagnosis and Treatment of a Sick Rule,* 53 CORNELL L.REV. 1036, 1039 (1968). *See also W.K. Ewing Co., Inc. v. Krueger,* 152 S.W.2d at 490; 36 TEX.JUR.3d, *Evidence,* § 340 (1984); 2 R. Ray, LAW OF EVIDENCE (Texas Practice 3d ed.) § 1661 (1980).

Oral testimony in such a case does not vary the terms of the writing but shows that it was never intended to be a contract or to be of binding force between the parties. 30 AM.JUR.2nd, *Evidence,* § 1034; *Burke v. Dulaney,* 153 U.S. 228, 14 S.Ct. 816, 38 L.Ed. 698 (1894).

▪ As has been seen, the general rule discussed above operates outside the ambit of the common law parol evidence rule. The Texas Rules of Evidence do not directly deal with the parol evidence rule and do not change that conclusion. The question remains whether Texas Business and Commerce Code, section 2.202,[3] calls for a different interpretation. Section 2.202 codified a parol evidence rule, at least for

---

**3.** Section 2.102 provides in part: "Unless the context otherwise requires, this chapter [chapter 2] applies to transactions in goods...."

transactions in goods. TEX.BUS. & COM. CODE, § 2.102 (Vernon 1968).[4] Since the instant case involved the sale of an airplane, the sale of goods, section 2.202, clearly must be considered.

### UNIFORM COMMERCIAL CODE

Section 2.202 provides:

Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented (1) by course of dealing or usage of trade (section 1.205) or by course of performance (section 2.208); and (2) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

This Texas codified parol evidence rule has been held applicable to the sale of goods. *Bob Robertson, Inc. v. Webster*, 679 S.W.2d 683, 688 (Tex.App.—Houston [1st Dist.] 1984, no writ); *cf. Chaplin v. Milne*, 555 S.W.2d 161 (Tex.Civ.App.—El Paso 1977, no writ) (where the court without comment or question applied the parol evidence rule "embodied" in section 2.202 to a suit on a promissory note).

It is pointed out that UCC 2–202 does not allow the reception of parol evidence until it is determined by the court that the writing was intended as the final and complete contract of the parties. R. Anderson, *Uniform Commercial Code*, § 2–202:21 (3d ed. 1981). "The mere fact that there is a writing does not give rise to any presumption that it was intended to be the total con-

tract. The Code modifies the parol evidence rule to the extent that there is no presumption that an apparently complete writing is a total integration...." *Id.*[5] The question then remains whether the general basic rule that a party may always show that there was no contract despite the existence of an integration, *Baker v. Baker, supra*, has been curbed by Texas Business and Commerce Code, section 2.202. *See Baker v. Baker*, 183 S.W.2d at 728.

Section 1.103 of the Texas Business and Commerce Code provides that unless displaced by a provision of the Code, the prior law, the general principles of law, and equity are applicable. *See generally Griffin v. Ellinger*, 538 S.W.2d 97 (Tex.1976); *Chaq. Oil Co. v. Gardner Machinery Corp.*, 500 S.W.2d 877 (Tex.Civ.App.—Houston [14th Dist.] 1973, no writ); *First Nat'l Bank in Grand Prairie v. Lone Star Life Ins. Co.*, 524 S.W.2d 525 (Tex.Civ.App.—Dallas), *writ ref'd n.r.e. per curiam*, 529 S.W.2d 67 (Tex.1975); *Pacific Products, Inc. v. Great Western Plywood, Ltd.*, 528 S.W.2d 286 (Tex.Civ.App.—Fort Worth 1975, no writ).

We find nothing in Texas Business and Commerce Code 2.202 or elsewhere which displaces the general rule that a party may show that there was no contract. In discussing this question, it has been said that

Turning specifically to the precise language of section 2–202 [UCC], it should not be overly difficult to conclude that the parties did not intend the writing to be legally binding ... should be admitted. Section 2–202 states that "prior agreement[s]," "contemporaneous oral agreement[s]," and "consistent additional terms" are inadmissible, the latter terms being inadmissible only where the writing is intended to be 'a complete and exclusive statement of the terms of the agreement.'

*Law and Equity Under the Uniform Commercial Code*, § 3.04 (1985). *See also Hendeca Petroleum Corp. v. Tampimex Oil Int'l*, 740 S.W.2d 838 (Tex.App.—Houston [1st Dist.] 1987, no writ); *Bob Robertson, Inc. v. Webster*, 679 S.W.2d 683 (Tex.App.—Houston [1st Dist.] 1984, no writ); *Conner v. May*, 444 S.W.2d 948 (Tex.Civ.App.—Austin 1969, writ ref'd n.r.e.).

4. See the Uniform Commercial Code Comment to section 2.202 which particularly points out the prior law which the section "definitely rejects."

5. As to the procedure to be utilized the Texas Business and Commerce Code, section 2.202, is invoked, *see generally* J. White & R. Summers, *Uniform Commercial Code*, 3d ed., § 2–9; R. Hillman, J. McDonald & S. Nickles, *Common*

Broude, *The Consumer and The Parole Evidence Rule: Section 2–202 of the Uniform Commercial Code* 1970 DUKE L.J. 881, 896 (1970).

In R. Anderson, *supra*, § 2–202: 65, it is stated:

> Neither UCC Sec. 2–202 nor the parol evidence rule has the effect of barring proof of the conduct of the parties affecting the validity of the contract...." *See also* 2d, §§ 2–202: 50, 60.

In J. Calamari & J. Perillo, *Contracts*, "The Parol Evidence Rule, § 3–7(g) (3d ed. 1987), it is written:

> Section 2–202 of the UCC makes no reference to the general rule that a party may show that there was no contract despite existence of an integration. However, UCC § 1–103 provides that where the code is silent the common law should be applied.... It may be safely assumed that the courts will apply all aspects of the non-formation rule to UCC cases.

*See also J. White & R. Summers, supra,* § 2–11, p. 119.

■ Although we have not found a Texas case directly in point, we conclude that parol evidence is always competent to show the nonexistence of a contract, or the invalidity of a contract even if there is a writing purporting to be an integration, and that such matters are outside the scope of the common law parol evidence and the ambit of Texas Business and Commerce Code, § 2.202, with regard to the sale of goods. These matters are admissible on their own merit and not as an exception to the parol evidence rule or § 2.202 of the said Texas Code. *See* and *cf.* 3A C. Corbin, *Contracts* § 589 at 274 (Supp.1964). The rule in *Baker v. Baker, supra,* is still alive and well in Texas. See TEX.BUS. & COM.CODE, § 1.103 (Vernon 1968).

■ Appellant's reliance upon the common law parol evidence rule is misplaced, and § 2.202 offers him no comfort. The trial judge did not err in admitting the complained of testimony on a "no contract" or non-formation theory. Such oral testimony did not vary the terms of the mailgrams as contended by appellant but showed that the mailgrams were never intended to be a contract or of binding force between the parties. We need not reach or decide whether the parol evidence may have also been admissible on another basis. King's first point of error is overruled.

### JUDGMENT N.O.V.

■ In his second point of error, King urges that the trial court erred in denying his motion for judgment notwithstanding the verdict since no admissible evidence of probative value supports the jury's finding to special issue number one.

In *Wilkins v. Bain,* 615 S.W.2d 314 (Tex. Civ.App.—Dallas 1981, no writ), the court wrote:

> Although parol evidence was admitted, without objection, to vary and contradict the terms of the written agreement, such evidence lacks probative force and cannot support the jury's findings. *Benson v. Jones,* 578 S.W.2d 480 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.); *Fort Worth Nat'l Bank v. Harrell,* 544 S.W.2d 697 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n.r.e.).

This is so because, as stated in 50 TEX. JUR.2d *Sales,* § 116, p. 421, "[T]he parol evidence rule, also referred to as the extrinsic evidence rule, is actually not a rule of evidence at all. On the contrary, it is a rule of substantive law." *See also* R. Anderson, *Uniform Commercial Code,* (3d ed. 1981) § 2–202:9; J. Wigmore, *Evidence,* § 2400 (3d 1940); *Wallach,* "The Declining 'Sanctity' of Written Contracts—Impact of The Uniform Commercial Code on The Parol Evidence Rule," 44 MO.L.R. 651, 652 (1979).

However, as we have earlier held, the parol evidence in the instant case was admitted under a general rule that lies outside the scope of both the common law parol evidence rule and section 2.202 of the Texas Business and Commerce Code. Therefore, such parol evidence did not lack probative force, and appellant's point of error is without merit.

Rule 301, Texas Rules of Civil Procedure, provides that upon motion and reasonable

notice the court may render a judgment non obstante verdicto "if a directed verdict would have been proper" and may disregard any special issue jury finding that has no support in the evidence. It appears to be appellant King's argument that the trial court should have disregarded the jury's answer to special issue number one and entered a judgment non obstante verdicto in his favor for $65,000.00 damages and for $18,000.00 in attorney fees.

It is established that a trial court may not properly disregard a jury's negative finding on a special issue and substitute its own affirmative finding unless the evidence conclusively establishes the affirmative finding. *See Bond v. Otis Elevator Co.*, 388 S.W.2d 681 (Tex.1965); *New Process Steel Corp. v. Steel Corp.*, 703 S.W.2d 209, 216 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.); *Highlands Ins. Co. v. Baugh*, 605 S.W.2d 314 (Tex.Civ.App.—Eastland 1980, no writ); *Drexel v. McCutcheon*, 604 S.W.2d 430 (Tex.Civ.App.—Waco 1980, no writ; *Brownsville & Matamoros Bridge Co. v. Null*, 578 S.W.2d 774 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.).

A directed verdict is proper only when the evidence shows that no other verdict could be rendered, and the moving party is entitled to judgment as a matter of law. *Spicer v. Great Service, Inc.*, 580 S.W.2d 14 (Tex.Civ.App.—San Antonio 1979 no writ); *Page v. Texas Employers Ins. Ass.*, 544 S.W.2d 452 (Tex.Civ.App.—Dallas 1976), *aff'd*, 553 S.W.2d 98 (Tex.1977).

■ Even if the complained of parol evidence lacked probative force or value, the other evidence did not establish the appellant King's damages as a matter of law or negate the appellee's other defenses. Since a directed verdict was not proper, the trial court could not properly have granted the judgment non obstante verdicto. King's second point of error is overruled.

The judgment is affirmed.