**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 01-51264**
_____


**PETER HALMOS and**
**PETER HALMOS & SONS, INC.,**

**Plaintiffs-Appellants,**

**versus**

**DIGITAL MOTORWORKS, INC.,**
**UMBRELLA ACQUISITIONS, INC.,**
**a/k/a "NEWCO"; and**
**JOHN GILBERT,**

**Defendants-Appellees.**

_____

Appeal from the United States District Court
for the Western District of Texas
Civil Docket No. A-OO-CV-714-SS

_____

January 6, 2003


Before JONES, SMITH and SILER,[*] Circuit Judges.

SILER, Circuit Judge:[**]

_____

[*]Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

[**]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Plaintiffs Peter Halmos and Peter Halmos & Sons, Inc. appeal the summary judgment granted in favor of Defendants John Gilbert, Digital Motorworks, Inc. ("DMI"), and Umbrella Acquisitions, Inc., a/k/a Newco ("Newco"), for breach of contract, tortious interference with business opportunity, abuse of process, defamation, tortious interference with, and breach of, indemnification rights, and securities fraud. We AFFIRM.

## BACKGROUND

Gilbert and Varick Foster were the founders of DMI. Gilbert and Foster each owned 47.5 percent of the stock in the company. By 1999 their interests diverged and they became unable to work together. On November 10, 1999, Halmos met with Gilbert and Foster to discuss a sale of Gilbert's shares in DMI. The parties do not agree as to what occurred at this meeting. Halmos believes that an oral agreement was reached whereby Gilbert was granted the option to purchase Foster's DMI shares for $10 million plus a nondilutable ten percent equity interest, consisting of nonvoting shares in DMI or any successor company, within thirty days of November 10. If Gilbert failed to make a timely tender of both the money and the equity interest, Halmos had the right and obligation within a reasonable time to purchase Gilbert's shares for $1 million plus a nondilutable ten percent nonvoting equity interest. Gilbert contends that no agreement was reached at the November 10 meeting.

2

On November 11, 1999 Foster sent a letter to Gilbert and Halmos to "follow up" the November 10 meeting. In the letter Foster states that:

> [W]e have agreed that if in the next 30 days [Gilbert] is able to secure financing in the amount of ten million dollars ..., I will at the end of the period sell to [Gilbert] all of my [DMI] shares for ten million dollars cash and ten percent of any subsequent sale or cash-out of DMI. If after 30 days [Gilbert] is not able to secure the required cash financing, Peter Halmos in association with me will purchase all of [Gilbert's] shares in DMI for one million dollars ($1,000,000.00) cash and ten percent of any subsequent sale or cash-out of DMI.

The letter was signed only by Foster. The difference (which the parties treat as dispositive) between the terms set out in this letter and the purported oral agreement is the condition upon which Halmos's right to purchase Gilbert's stock vests. Under Halmos's view of the facts regarding the oral agreement reached on November 10, Gilbert was required to tender both $10 million and a nondilutable ten percent interest in DMI to Foster. Under the terms of the letter, however, Gilbert was required only to provide $10 million within 30 days. Gilbert's conveyance of the nondilutable ten percent, while part of the purchase price, was not part of the condition that determined whether Halmos had the right to purchase the stock.

On December 10, thirty days after the meeting, Gilbert tendered to Foster $10 million in cash and an executed commitment by Gilbert to cause Foster to receive ten percent of any subsequent sale or cash out of DMI. Halmos argues, however, that Gilbert's

3

tender was defective because prior to December 10 other investors became involved in the transaction and as a result Gilbert could no longer tender a nondilutable ten percent interest in DMI. On December 11, Foster rejected Gilbert's tender. On December 17 and 20, Halmos tendered $1 million plus a ten percent equity interest to Gilbert which was rejected by Gilbert.

The district court granted summary judgment on all of Halmos's claims. With respect to all of the claims except defamation, the district court granted summary judgment because in its view although an oral agreement was reached on November 10, it was superseded by the November 11 letter which in the district court's view set forth the complete terms of the agreement. The court held that under the November 11 agreement Gilbert provided an adequate tender and thus Halmos's rights were not triggered. Additionally, the district court held that Halmos did not have standing to challenge Gilbert's tender to Foster. The district court also granted summary judgment on the defamation claim, holding that Halmos is a limited purpose public figure and that he failed to produce evidence that Gilbert made a defamatory, false statement while acting with actual malice.

## STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo. Hodges v. Delta Airlines, Inc., 44 F.3d 334, 335 (5th Cir. 1995) (en banc). Summary judgment is appropriate when, viewing the

4

evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Hunt v. Cromartie, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551–52, 143 L. Ed. 2d 731 (1999); see also Fed. R. Civ. P. 56(c).

**DISCUSSION**

This dispute boils down to whether the November 10 oral agreement or the November 11 letter is the controlling agreement between Halmos, Gilbert, and Foster. For the November 11 letter to constitute a contract there must be "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding." Copeland v. Alsobrook, 3 S.W.3d 598, 604 (Tex. App.–San Antonio 1999, pet. denied). The November 11 letter was signed only by Foster. While there are no Texas cases holding that a letter signed by only one party to a contract can nullify a binding oral agreement reached among multiple parties, under Texas law a contract need not be signed for the contract to be valid; a party may accept a contract "by his acts, conduct or acquiescence in the terms of the contract." Hearthshire Braeswood Plaza Ltd. P'ship v. Bill Kelly Co., 849 S.W.2d 380, 392 (Tex. App.–Houston [14th Dist.] 1993, writ denied).

The district court held that Halmos recognized Foster's letter

5

as the contract when Halmos's attorney, as part of Halmos's tender, forwarded an unsigned irrevocable commitment to cause Gilbert to receive ten percent of any future cashout of DMI. The unsigned document recites, "Whereas, on November 10, 1999, Gilbert agreed to sell to Peter Halmos ... all of Gilbert's stock ... in DMI as set forth expressly in that certain letter from Foster to Gilbert and Halmos, dated November 11, 1999." The district court also pointed to Halmos's silence regarding the November 11 letter after he received it despite the purported mistake in reducing the oral agreement to writing as evidence demonstrating that he accepted the letter. Thus, it appears that the November 11 letter constituted a valid contract.

The record before us contains conflicting evidence as to whether an oral agreement was reached by Halmos, Foster, and Gilbert on November 10. Assuming arguendo, that Halmos's view of the facts is correct and that an oral agreement was reached on November 10, we still conclude that the district court's grant of summary judgment was proper. This is because even if an oral agreement was made on November 10, the agreement merged into the November 11 letter. Under Texas law, "when the same parties to an earlier agreement later enter into a written integrated agreement covering the same subject matter," the earlier agreement merges into the subsequent written agreement. <u>Carr v. Weiss</u>, 984 S.W.2d 753, 764 (Tex. App.–Amarillo 1999, pet. denied). If the previous agreement merges into the subsequent written agreement, then

6

evidence of prior oral agreements is inadmissible parol evidence. Id. ("the 'merger doctrine' is an analogue of the parol evidence rule").

Before one contract is merged into another, the subsequent contract must: (1) be between the same parties as the first; (2) embrace the same subject matter; and (3) must have been so intended by the parties." Kona Tech. Corp. v. Southern Pac. Transp. Co., 225 F.3d 595, 612 (5th Cir. 2000). In this case, there is no question that the subsequent contract (the November 11 letter) was between the same parties and embraced the same subject matter. Furthermore, given that the letter explicitly stated that it was a "follow up" to the November 10 meeting, we find that there is no genuine issue of material fact as to whether the letter was intended to merge with the prior oral agreement. Therefore, we hold that the November 10 oral agreement, if made, merged into the November 11 letter and as such evidence of the oral agreement is inadmissible parol evidence.

Halmos argues that the court should have allowed parol evidence regarding the November 10 meeting because (1) the November 11 letter is not fully integrated, (2) the November 11 letter is ambiguous, and (3) parol evidence is always admissible to establish whether a condition precedent was satisfied. These arguments are not persuasive.

Integration occurs when the parties intend that a writing will be the final and complete expression of their agreement. Aboussie

7

v. Aboussie, 441 F.2d 150, 154, reh'g granted on other grounds, 446 F.2d 56 (5th Cir. 1971).  A written letter agreement is incomplete when it is "facially incomplete and requires extrinsic evidence to clarify, explain or give meaning to its terms; or ... when viewed in light of the circumstances surrounding its execution, the writing does not appear to be the complete embodiment of the terms relating to the subject matter of the writing."  Jack H. Brown & Co. v. Toys "R" Us, Inc., 906 F.2d 169, 174 (5th Cir. 1990) (internal citations omitted).  On its face, the letter at issue here identifies the parties, the object of the contract (the DMI stock), the price to be paid, and the conditions upon which each party has a right to tender performance.  While perhaps not the most thorough contract ever written, the letter is a complete contract.

Halmos also argues that the statement regarding his right to purchase Gilbert's stock if "[Gilbert] is unable to secure the required cash financing [to purchase Foster's stock]" is ambiguous because the letter also refers to Foster's receiving ten percent of any future cashout of DMI.  "The question of whether a contract is ambiguous is one of law for the court." R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc., 596 S.W.2d 517, 518 (Tex. 1980).  The condition as expressed in the letter is not ambiguous; it is clear that Halmos's rights depended upon whether Gilbert arranged for the cash financing.  While Gilbert may have been required to provide both cash and a nondilutable equity interest to purchase Foster's

8

stock, the letter clearly conditions Halmos's rights only on Gilbert's inability to obtain $10 million in cash.

Finally, Halmos contends that parol evidence is admissible to show the condition precedent to Halmos's rights under the contract, citing to De La Morena v. Ingenieria E Maquinaria De Guadalupe, S.A., 56 S.W.3d 652 (Tex. App.–Waco 2001, no pet.). De La Morena does not state or even suggest, however, that parol evidence of a condition precedent is always admissible when the condition is expressed in a written contract. Oral conditions precedent cannot be proven by parol evidence when the alleged oral condition is inconsistent with the written instrument. Texas Workers' Compensation Ins. Fund v. Texas Employment Comm'n, 941 S.W.2d 331, 334 (Tex. App.–Corpus Christi 1997, no pet.) (citing Baker v. Baker, 183 S.W.2d 724, 728 (Tex. 1944) (on petition for rehearing)).

In sum, the November 11 letter was a valid contract, which by its terms required Gilbert only to tender $10 million within 30 days, which he did. Therefore, the district court was correct in awarding summary judgment to the defendants.[1] Halmos's other

---

[1] DMI and Newco argue that Halmos's right to buy Gilbert's stock for $1 million if Gilbert failed to make a sufficient tender for Foster's stock for $10 million is a liquidated damages clause that is an unenforceable penalty. This argument is wholly lacking in merit. Halmos's ability to buy the stock at a lower price is not compensation for a breach but simply a provision contingent on a condition failing to occur.

9

challenges to the district court's ruling are likewise unavailing.[2]

**AFFIRMED.**

---

[2]The district court also granted summary judgment on Halmos's defamation claim, holding that Halmos is a limited purpose public figure and that Halmos had failed to produce any admissible evidence of the alleged defamatory statements or that the alleged statements were false and made with actual malice. Halmos asserts that the court erred in granting summary judgment because it had not allowed sufficient time for discovery to occur. Halmos did not file a Rule 56(f) affidavit requesting time for additional discovery in the lower court.

A district court's denial of a motion for additional time for discovery under Fed. R. Civ. P. 56(f) is reviewed for abuse of discretion. Beattie v. Madison County School Dist., 254 F.3d 595, 605 (5th Cir. 2001). Even if Halmos did invoke Rule 56(f), he has not made the required showing. When the court granted summary judgment it specifically noted that Halmos had deposed seven DMI workers who worked at DMI when the allegedly defamatory statement was sent out over the DMI email system. Also, the period for discovery had closed six weeks before the court entered the summary judgment. Halmos's argument does not explain why more time for discovery would help him find the alleged defamatory statement given that this issue was in the case from its inception.